GALVESTON CITY COMPANY v. CITY OF GALVESTON.

(Case No. 1425.)

1. SALE OF LAND FOR TAXES — SUBSEQUENT PAYMENT OF TAXES BY OWNER UNDER PROTEST.— That a city tax collector, in his receipt, states the payment of an assessment on lands to have been made under protest, does not affect the character of the payment as voluntary or involuntary, where the lands have already been sold under the law regarding delinquent tax-payers, and bought by the city, and the payment is afterwards made in pursuance of an agreement between the former owner and the city.

2. PROPOSITION OF OWNER — EVIDENCE OF VOLUNTARY PAYMENT.— The proposition of a property owner to pay such assessment if the city would remit the interest and penalty allowed by law, though the right be reserved to resort to the courts should he thereafter find occasion, evidences a voluntary payment.

3. PROTEST SHOULD BE SPECIFIC.— A protest to be effective should refer specifically to property claimed to be illegally taxed, and not generally to property admitted to be legally taxed as well as the former.

4. PAYMENT OF ILLEGAL DEMAND VOLUNTARY — EXCEPTION.— The payment of an illegal demand by a party with full knowledge of the facts, except in case of necessity, as to protect one's person or property, is deemed voluntary.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

*Willie & Cleveland*, for appellant.

I. The court erred in holding that the facts proven on the trial of said cause were not sufficient to establish that the money sued for herein was paid under duress. Galveston City Charter of 1871, art. 2, sec. 2; art. 9, sec. 1; art. 10, sec. 1; art. 11, sec. 1; arts. 12, 13, 14; Galveston Co. *v.* Gorham, 49 Tex., 279, 300, 303, 305, 308–310; Galveston Gas Co. *v.* Galveston Co., 54 Tex., 287; Baker *v.* Panola Co., 30 Tex., 86; Marshall *v.* Snediker, 25 Tex., 460; Erskine *v.* Van Arnsdale, 15 Wall., 56, 57; Cooley on Taxes, pp. 568, 542, 565, 569; Burroughs on Taxation, pp. 443, 266, 442, 343; Blackw. on Tax Titles, marg. p. 165; Hays *v.* Hogan, 5 Cal., 243; Grey *v.* Lohrbun, 23 Cal., 113; Grand Rapids *v.* Blakely, 40 Mich., 367.

II. The court erred in holding that the plaintiff had voluntarily paid the taxes and costs, to recover which this suit was instituted.

III. The court erred in holding that taxes paid under protest, with notice to the authorities exacting and receiving them, when the party paying reserved his right to sue for their recovery, could not be recovered back, although such taxes were illegal and void.

IV. The court erred in construing the proposition made by the plaintiff for the redemption of the property to mean only that the plaintiff should not be prejudiced in case of the rejection of the offer of defendant. Same authorities as under first assignment.

*R. V. Davidson*, for appellee.

I. "The court" did not err "in holding that the facts proven on the trial of said cause were not sufficient to establish that the money sued for herein was paid under duress."

The judge, at the request of appellant, gave his conclusions of law upon the foregoing facts, which conclusions of law are as follows:

"Applying these facts to the law, it is the opinion of the judge that the payment of the money by the Galveston City Company to the city of Galveston, which the plaintiff seeks to recover back in this suit, was a voluntary payment, made without mistake of fact or fraud, and it is not against good morals for the defendant to retain it, and the plaintiff has no legal or equitable right to recover it back. It is not questioned that money paid under protest to prevent sale of property for illegal taxes, thereby preventing a cloud upon plaintiff's title, which would exist by reason of the sale, may be recovered back. In that case there is a threatened danger, which it may not be in the power of the plaintiff to avert except by payment of the tax to the officer under protest, or by resort

to the equitable power of the judge for writ of injunction; but that is a very different state of case from the facts of the case at bar. In the case before the court the property had been sold for taxes, and the title of the plaintiff had become vested in the purchaser, the city of Galveston, and the tax collector had no authority thereafter to receive the taxes and relinquish or cancel the title acquired under the tax sale, except by direct action of the city council directing the receiving of the money and ordering a cancellation of the city's title acquired by the purchase; and in pursuance of the order of the city council, the title acquired by the city of Galveston under the purchase at the tax sale was relinquished upon the payment of the sum of money in this suit sought to be recovered back from the city. . . . .

"Evidently the intent, purpose and object of this latter clause of the proposition was from abundant caution, that no unfavorable deduction was to prejudice the City Company in the maintenance of any suit that she might institute in the event that their proposition should be rejected, such as that it should not thereby be inferred that the company recognized the validity of the tax or of the sale.

"If it had been intended to include the idea that the City Company should have the right to institute suit to recover back the money, it should have been expressed in appropriate language to convey the idea, for none such can be fairly deduced, either from the context or the surrounding circumstances. And the language is not, upon the payment of the money, the company should have the privilege of suing to recover it back, or any words conveying that proposition, but the language is, 'the payment herein tendered must, however, be understood to be without prejudice to any rights of the company in the premises, or to the assertion of those rights in the courts, if the company should hereafter find occa-

sion so to do.'   There is no intimation that the company reserved the right of resorting to suit to recover the money back if paid, nor is there intimation that the payment was to be made under protest."   Charter of City of Galveston, August 2, 1876, title 5, art. 7, sec. 94; title 5, art. 12, sec. 99; Dill. on Mun. Corp., 3d ed. (2d vol.), pp. 939–948; 3d ed. (2d vol.), secs. 776, 794, 795, and authorities cited in notes; Galveston Gas Co. v. County of Galveston, 54 Tex., 287; Ladd v. Southern Cotton Press Co., 53 Tex., 172; Railroad Co. v. Commissioners, 98 U. S., 541; Fleetwood v. City of New York, 2 Sandf., 481; Detroit v. Martin, 34 Mich., 170; Lee v. Templeton, 13 Gray, 476; Mayor, etc., v. Lefferman, 4 Gill, 425.

STAYTON, ASSOCIATE JUSTICE.—In this cause it appears that the Galveston City Company in the year 1876 was the owner of all of the league and labor of land on which the city of Galveston stands, except such parts thereof as have been sold from time to time by said company or those under whom it claims.

In that year the city of Galveston, through its assessor, the owners therein not having assessed the same, assessed certain of said property which had been laid off into blocks or lots, east of 7th street and west of 43d street, for city taxes, said property being situated within the corporate limits; and the taxes thereon not having been paid, the same was sold in the year 1879 for the taxes so assessed, and was bought in by the city of Galveston for the taxes claimed to be due thereon, which amounted to the sum of $3,335.50.

Prior to the act of 2d of August, 1876, which gave to the city of Galveston a new charter, the land belonging to the Galveston City Company which was within the corporate limits of the city, but rural in character, was not subject to payment of city taxes except for their improvement; but by the act above referred to, all the land

within the corporate limits, whether urban or rural in character, was made subject to city taxes.

Before a deed was made to the city for the property bought at tax sale, the appellant, through its agent, addressed to the mayor and board of aldermen of the city the following communication:

" *To the Hon. the Mayor and Board of Aldermen of the City of Galveston:*

" GENTLEMEN — The Galveston City Company is the proprietor of a large tract of land, lying west of 43d street, much of which consists of bayous and low, soft, marshy ground, of no present value whatever, and which could not be made available for any practicable use until all the higher land has been improved and occupied — probably not within the life-time of any person now living.

" In 1876 the company was advised that this land was not, under the then existing charter, within the corporate limits for the purpose of taxation, but only for police purposes.    It therefore declined to render it to the city for taxation; and it was assessed by the assessor, Mr. C. T. White, as unrendered property, at an extravagant rate of valuation, — three or four times its real value, as this applicant verily believes.

" The tax has never been paid and the owner is informed that the land has all been sold for the taxes of that year.

" Now to avoid any unnecessary dispute or controversy between the city and the company, the owner of said property proposes to pay the said tax, excessive as it is believed to be, amounting to 3,207 30-100 dollars, with 28 20-100 dollars of costs, if the city will remit the interest and penalty which the collector deems it his duty to exact.

" The said company therefore prays the city council to direct the collector to receive the amount now tendered, to wit, the principal of the tax and the necessary costs,

and that the mayor of the city release to this proprietor all claim of the city to said land by reason of said tax sale.

"The payment herein tendered must, however, be understood to be without prejudice to any rights of the company in the premises, or to the assertion of those rights in the courts if the company should hereafter find occasion to do so. All which is respectfully submitted.

"J. P. COLE,
"Agent Galveston City Co."

The proposition was acted upon by the mayor and board of aldermen on the 28th April, 1879, and the payment was made to the collector of city taxes on the 30th April, 1879, who gave his receipt therefor, upon which, above his signature, was written the following words: "The above amount is paid under protest."

This suit was brought to recover the money so paid, with interest thereon from time of payment, the right to so recover being based upon the claim that the property upon which the tax was levied was not subject to payment of city taxes, and that the money was involuntarily paid under protest.

The case was tried without a jury, and in the findings of fact found in the record, it appears that the court found that the property east of 7th street was urban and that west of 43d street was rural in character; and the court also found that the payment was voluntarily made and could not therefore be recovered.

The main question in this case depends upon whether the payment made by the Galveston City Company was in a legal sense voluntarily made; for if not, if the tax was illegal, the judgment should have been for the company.

The stringent provisions in the constitution of this state and laws thereunder in reference to the effect to be given to tax titles authorize a more liberal construction

to be placed upon the act of a party who pays an illegal tax to prevent the sale of his property, and the consequent cloud which such a sale would constitute upon title to real estate, than could be given to such act of a party under laws less stringent. 54 Tex., 290. It is not, however, believed that the circumstances which immediately preceded the payment of the money in this case were such as to authorize the holding that the payment was not voluntarily made.

The statement made by the collector of city taxes on the receipt which he gave for the money, that the same was paid under protest, can have no effect in determining whether the money was voluntarily paid or not; for at the time he received the same his right to collect it by virtue of the process which originally authorized him to do so, had ceased at the time the payment was made, for as to the property upon which the tax was paid, the sale rendered such process as he may have had *functus officio;* and his act in receiving the money must be referred to the correspondence hereinbefore set out, and the action of the mayor and board of aldermen thereon, as must the act of the agent in making the payment.

In determining whether the money was voluntarily paid or not, an inquiry must be made into the intention of the parties at the time the money was paid; and unless it appears that, at that time, there was an unwillingness to pay, the payment must be held to have been voluntarily made, although there may have been an unsolved question in the mind of the agent of the party paying as to whether the company, at some future time, might desire to institute, or might institute a suit to recover the money then paid; for the purpose of determining this, the correspondence, and action had thereon, furnishes the best light which can be given.

In construing that part of the communication addressed to the mayor and aldermen of the city by the agent of

the company which the latter relies upon as showing that the payment was not voluntarily made, the court below was of the opinion that the sole office which it performed was to save the company from any unfavorable deductions which might be made from the correspondence in case the proposition therein set out was not accepted.

We are of the opinion that such was not its purpose; and it is not very clear what the real intention and purpose thereof was. It may have referred to a doubt upon the part of the company as to the power of the legislature to subject the property in question to the payment of city taxes, believing it to be rural in its character, and as indicating a desire upon the part of the company to avoid any unfavorable inferences arising in reference thereto by the proposed payment. Be this as it may, it only concerns us now to consider the same as indicating upon the part of the company a voluntary or involuntary payment.

The rights which the company sought to save from prejudice are not set out in the correspondence, nor are the rights which they reserve the right to enforce through the courts any better defined; but whatever they may have been, the concluding clause evidences that there was not then any formed intention to prosecute the present or a similar suit in the event their proposition was accepted and the money paid. The concluding words are, "if the company should hereafter find occasion to do so," i. e., if something hereafter appears, or if something hereafter occurs which gives occasion for resort to the courts, we will do so, notwithstanding we make the payment which we now propose. This language, taken with the context, does not evidence that the company, either at the time the proposition was made nor at the time the contemplated payment should be made, was unwilling to pay the money with a full knowledge of all the facts under which the same was claimed; but taken in connection with the

proposition to pay, and the prayer to the city to receive, evidences to us a voluntary payment.

The correspondence gave no direct intimation that a suit would be brought to recover the money back, which in case of payment to a municipal corporation in the way of taxes, in the opinion of the writer, should be given, in order that the financial affairs of such a corporation should not be embarrassed by the expenditure of money received in the way of taxes, without any notice of intention to sue to recover the same; but whether notice of such intention to sue be necessary or not, a protest, to be effective, should be specific and point out clearly what property has been illegally taxed, or what tax is illegal; and it should not be general, and refer as in this case to property which had been legally taxed, as well as to other property upon which it was claimed that the taxing was illegal.

There are other grounds, however, which to us seem to preclude the recovery by the appellant.

In the case of Railroad Co. v. Cummins, 98 U. S. S. C., 543, the common law rule is thus stated, quoting from another case: "When a party pays an illegal demand, with a full knowledge of all the facts which renders such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back; and the fact that the party at the time of making the payment files a written protest does not make the payment involuntary. This as we understand it is a correct statement of the rule of the common law." Marriot v. Hampton, 7 Term Rep., 269; 2 Smith's Leading Cases, 237 and notes.

If the last part of the correspondence could be considered a protest, that could not make the payment involuntary if voluntary in fact. The letter from the agent of

the company expressly states that the settlement as pro-
posed was desired in order "to avoid unnecessary dispute
or controversy between the city and the company;" that
is, to avoid litigation between them in regard to the
claim of the city to the taxes about which they differed
as to their respective rights, which in the event of the
proposed settlement would become unnecessary.

At that time the property had been sold and the city
became the purchaser; under the ordinances of the city,
parties failing to pay their taxes at the time they were
due were required to pay interest thereon besides a pen-
alty; this the city was claiming as must be presumed in
good faith, as it was also claiming that the tax was prop-
erly assessed upon the property, which, in so far as it
affected the property east of the street, was found by the
court below to be well founded. Not only was the city
asked to remit the interest and penalty, but it was asked,
after a sale had been made and it had become the pur-
chaser, to release whatever title it had acquired, and
to receive the taxes and costs in settlement, by way of
compromise of their respective rights, and this with a
view "to avoid any unnecessary dispute or controversy;"
that is, dispute or controversy in regard to the matter
then pending, which would become unnecessary if the
proposition of the company was accepted.

The parties must have understood that they were each
making concessions, through which litigation in regard
to the very matter now pending would be avoided, and
not that they were simply changing the character of the
litigation from a suit to set aside the deeds of the col-
lector to a suit to recover the amount of the taxes which
the company was then praying "the city council to
direct the collector to receive."

The facts present a case in which money was paid under
a contract by which a compromise of the adverse claims
of the parties were settled, with a full knowledge of all

the facts, and we know of no rule by which a payment so made can be said to have been involuntarily made, or made under compulsion either legal or moral.

After receiving the benefits of the contract, which destroyed, at least in part, the claims which the city was setting up, some of which were found valid in the court below, the company could not be heard to deny its validity, while it avails itself of the benefits, upon the ground that the contract was not binding because involuntary.

We have not deemed it necessary to consider what were the rights of the parties under the act of 1876, nor to consider other questions upon which the right of the city to the tax might depend, believing that the sum paid was paid under such circumstances as prohibits its recovery.

There being no error in the judgment of the district court it is affirmed.

AFFIRMED.