76  365
83  460

---

## CITY OF HOUSTON v. JACOB FEESER.

### No. 2872.

1. **Taxation.**—A tax unauthorized by law if voluntarily paid can not be recovered back, and this from considerations of public policy.

2. **Same.**—One who pays taxes to a municipal corporation from time to time in advance for the privilege of selling a commodity on which he has charged an increased price to reimburse himself for the taxes thus paid, can not maintain an action to recover them back.

APPEAL from Harris. Tried below before Hon. James Masterson. The opinion states the case.

*H. F. Ring,* for appellant.—The motion for a new trial should have been granted, because there was not a shadow of authority for the collection of the tax, and the payment of the same was purely voluntary.

Cool. on Tax.. pp. 819, 810, and authorities; Elliott v. Swartwout, 10 Pet., 137.

*Gustave Cook* and *A. C. Allen,* for appellee.

STAYTON, CHIEF JUSTICE.—This was a suit brought by appellee against the city of Houston to recover amount of certain license taxes paid by appellee as claimed by him for the privilege of carrying on the business of a butcher in the city. This tax amounted to the sum of $15 a month, and the evidence showed that this sum had been paid by the appellee for a period of several years previous to the institution of this suit. Judgment was rendered in appellee's favor for the sum of $277.50, the same being the full amount of plaintiff's claim except that portion of it barred by the statute of limitations, which was pleaded.

There is no assignment of error raising the question whether the city was empowered by its charter to collect such a tax; nor is there any claim made that the tax was legal.

The first assignment urges that the court erred in assuming that the license tax was unreasonable, and in charging the jury to that effect.

The record does not show that any charge containing such assumption was given; but on the contrary, throughout the charge assumes that the tax was illegal, without reference to its reasonableness or unreasonableness. The only question about which there could be any controversy, that was submitted, was whether the tax was voluntarily paid.

The charge which informed the jury what would or would not be a voluntary payment is not complained of; but it is urged that the court erred in refusing to grant a new trial, asked on the ground that the evidence was not sufficient to sustain the verdict.

Whether payments were voluntarily made was the only question of fact about which there was controversy. To show that payments made by appellee were involuntary, an ordinance of the city was introduced in evidence which declared it unlawful for persons to sell fresh meats at other places than the market house and such other places as might be established by the city council, but this seems to have been restricted to hours and days prescribed by the ordinance, which is not fully set out.

Another article of the ordinance provided for renting the stalls in the market house, and fixed the price of these at $20 per month, and it contained the further provision: "Ward market butchers $15 per month; $10 rent, $5 repairs." This would indicate an intention to fix a rental on property owned by the city and occupied by persons designated "ward market butchers," but not an intent to impose a license tax on "ward market butchers" who did business on their own property, as did appellee.

Another ordinance provided that "any person found guilty before the mayor of violating or evading any of the provisions of this chapter shall

be fined in a sum not exceeding $100 and not less than $5, and costs of prosecution," and it was made the duty of officers named to see that the ordinance was enforced.

From the parts of the ordinances found in the record we do not see that any penalty was imposed on appellee for pursuing the business of butcher on his own premises without the payment of a license tax, and it is not shown that his place was not one established by the city council as a market place.

Appellee stated that before he commenced business he inquired what the tax would be, and was informed by the market master that the tax on such butchers was $15 per month, to be paid in advance, and that if he pursued the business and did not pay it, under the laws and regulations of the city he would be arrested and fined.

He then stated that he made inquiry of other butchers, who told him they had been paying, and if he did business and did not, they would enforce the law against him; that he then commenced business and paid license tax at the rate of $15 per month until June 1, 1889, when, the rate demanded being raised, he refused further to pay, when he was arrested, but at the end of litigation found not liable to any punishment for failure to pay the tax. He further stated that he was told by officers that he would be fined and his business closed if he did not pay the tax; that he believed this to be true, and otherwise would not have paid; that he had heard that two other butchers had been arrested and fined for failure to pay, and believed he would be; but he seems to have regarded the tax as unjust and to have been not unwilling to test its validity, and still continued to pay and add an increased price to the meat sold by him sufficient to meet the tax.

The taxes were paid in advance, and seem to have been collected from about 1867 until July, 1889, from all butchers, but appellee commenced business in 1884.

This is the strongest case against voluntary payment the evidence makes, and is it sufficient to sustain the verdict?

That a tax voluntarily paid can not be recovered, though it had not the semblance of legality, is well settled; and as said by an elementary writer, "every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he can not afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back. * * * Mistake of fact can scarcely exist in such a case except in connection with negligence, as the illegalities which render such a demand a nullity must appear from the records, and the tax payer is just as much bound to inform himself what the records show as are the public authorities. The rule of law is a rule of sound public policy also; it is a rule of quiet as well as of good faith, and precludes the courts being occupied in un-

doing the arrangements of parties which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorace of their legal rights and liabilities." Cool. on Tax, 809.

There was no law requiring appellee to pay the tax which he seeks to recover; no process, civil or criminal, had issued or could legally issue under which his person or property could be seized; he believed the tax unjust and was not averse to testing its legality, and yet paid in advance for each month because he was told the city demanded it, and believed an opportunity to test the legality of the demand should be afforded him if he refused to pay.

We are of opinion that a tax so paid was voluntarily paid. The will which determined to pay was not thus moved to act by anything which can be held to have been coercion. Railway v. Commissioners, 98 U. S., 541; Oceanic Co. v. Tappan, 16 Blatch., 296; Taylor v. Board of Health, 31 Pa. St., 74; Bank v. Chalfant, 52 Cal., 170; Meriel v. Austin, 53 Cal., 379; 54 Ind., 83; Galveston City Co. v. Galveston, 56 Texas, 494; Taylor v. Hall, 71 Texas, 216.

According to appellee's own testimony, the taxes which he seeks to recover were actually paid by those who bought meats from him, for he states that on account of the tax he increased the price sufficiently to raise the sum to pay it from time to time, and thus made his fair profit and cast the burden of taxation on the people who purchased from him.

He now asks that these people, in part at least, be compelled to pay to him that which they have once paid; for if he recovers the judgment which he asks the people must be taxed to pay it. There is no equity in such a claim.

We are of opinion that the evidence does not show an involuntary payment, and that a new trial should have been granted; and for the ruling of the court on that question, its judgment will be reversed and cause remanded.

*Reversed and remanded.*

Delivered February 28, 1890.