## CITY OF LAREDO V. C. T. LOURY.

(No. 7856.)

APPEAL from Webb County.    Opinion by SIMKINS, J.

ATLEE & EARNEST, counsel for appellant.

NICHOLSON & DODD, counsel for appellee.

§ **320.** *Municipal corporations; cannot levy an occupation tax not authorized by statute or its charter.* Appellee was a butcher and rented a stall in appellant's market at $15 per month;— all butchers and vendors of meat and vegetables were required under an ordinance of the city to rent stalls and to sell only at the market. Appellant also had a market-master whose duty it was to inspect all meats and vegetables offered for sale, and under the ordinance of the city, every person pursuing the occupation of a butcher was required to pay one dollar per head for every beef; ten cents for every goat or mutton; fifty cents for every calf, and twenty-five cents for every hog, and disobedience of the market-master's order was punished by fine of from ten to one hundred dollars.

The proceeds from these inspection fees were $350 per month; the salary of the market-master was $40 per month.    Appellee paid the inspection fee under constant protest, and on January 26, 1891, sued the city to recover the taxes so paid, and praying for injunction against the further collection of the inspection fees.    The city filed its obligation to refund the inspection fees should the injunction be perpetuated, and the court thereupon dissolved the injunction, but on final hearing gave judgment for $550, the amount of inspection fees paid by appellant from the time of protest, and perpetuated the injunction, and the city appeals.

There are two questions to be considered:

First.    Can a city levy a tax on an occupation for

revenue where not authorized by the statute or city charter?

It cannot be questioned that the inspection tax levied under the city ordinance was for revenue purposes. The taxes were paid directly into the city treasury and passed into the general fund; were paid out in general appropriations, and did not specially go to the inspecting officer in payment for *his* fees for inspecting. On the contrary the officer only received $40 per month paid by the city, while the city received from such source $350 per month.

Again, the ordinance declares it a tax on the occupation, as follows: "There shall be paid by every person pursuing the occupation of butcher, an inspection fee of one dollar per head for every beef slaughtered," etc. [Section 4, chapter 2, of City Ordinances.] The occupation of butcher is not subject to taxation in Texas, and it is not pretended or shown that, under any charter powers specially granted to the city of Laredo, she can tax any occupation not declared taxable by law. Could such powers be granted under the constitution? The question then recurs, can the tax be sustained? We think not. Our supreme court in the case of Wm. Horfling & Son v. The City of San Antonio, just decided, has passed upon the very question, and holds that under the last paragraph of section 1, article 8, of the constitution, to wit: "the occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business shall not exceed one-half of the tax levied by the state for the same period on such profession or business," a municipal corporation cannot tax a business not made taxable by law; and until the legislature, says the court, has declared a certain occupation or business shall be taxed and has fixed the amount of the tax, then and not before has a county, city or town the power to tax that occupation. For the constitution does not require occupations to be taxed, and only permits it when the legislature deems it

proper. And its failure to make it taxable for the benefit of the state is in effect a declaration that is not a necessary or proper subject of taxation; and Hirshfield v. City of Dallas, *ante*, p. 259, in so far as it conflicts, is herewith overruled.

§ **321.** *Municipal corporations; voluntary payment of an illegal tax, what is a.* The second question is, can the appellee recover back the money illegally demanded and received by the city as inspection fees?

The doctrine is stated that in order to recover back money paid on an illegal demand with knowledge of the facts that rendered the demand illegal, the payment must be made upon immediate and urgent necessity, to release the person or property from detention or prevent an immediate seizure thereof; and the fact that the party at the time of payment makes a written protest does not make the payment voluntary. [Galveston City Co. v. Galveston, 56 Tex. 494.]

It cannot be denied that the payments in this case were made by defendant under the fear that his business would be closed up and he would be shut out from the market by order of the market-master, whose duty it was to collect the inspection fees daily as well as the rents for stalls monthly, and appellant daily protested against the payment. It is further shown in the findings of fact that the market-master could establish regulations to enforce market ordinances, and disobedience thereof was punishable in the mayor's court by fine; and it would certainly seem that appellee was not required to try conclusions with one armed with such extraordinary powers and could claim that the payments were made under compulsion.

In the City of Houston v. Feeser, 76 Tex. 367, appellant, a butcher, in beginning business was informed by the market-master that he was to pay a tax of fifteen dollars per month in advance, and if he pursued the business and did not pay he would be arrested and fined.

He was also threatened by other butchers that if he did business without paying they would enforce the law against him. He was further notified by officers that if he ceased to pay he would be fined and his business closed. He also heard of two butchers who had been arrested and fined for non-payment, and other butchers were paying regularly, and on refusing to pay he was actually arrested. Yet this payment was held to be voluntary. It is to be observed that the court lays great stress on the fact that the butcher collected the tax paid by him out of his customers, and was seeking to recover back the tax he had paid,— a feature which is probably present in the case a bar.

Under this view of the law, which is in line with that of the supreme court of the United States in The Union Pacific Railway Co. v. Hodge Co., 98 U. S. 541, there must be an *immediate* and *urgent* necessity for the payment to prevent it from being voluntary; and payments made from day to day for months, though protested against and made under fear that legal proceedings *would* be instituted and business closed, is not sufficient to render the payments involuntary. The court therefore erred in giving judgment for the sum of $300 as inspection fees paid up to the 26th day of January, 1891. But unquestionably, appellee is entitled to recover the sum of $250, the amount of inspection fees which the trial court finds was paid by appellee to the city of Laredo after it had filed its obligation to refund all inspection fees paid by appellee up to the trial of the cause.

The judgment in this particular will be reversed and here rendered for the sum of $250, and in all things else be affirmed with costs.

June 22, 1892.    Affirmed.