# MAY, 1934

AUSTIN NATIONAL BANK OF AUSTIN, TEXAS, v. GEORGE H. SHEPPARD, COMPTROLLER OF PUBLIC ACCOUNTS, AND CHARLEY LOCKHART, STATE TREASURER.

No. 6607.   Decided May 2, 1934.
(71 S. W., 2d Series, 243.)

*Black & Graves, White, Taylor & Gardner,* all of Austin, and *Thompson, Knight, Baker & Harris,* all of Dallas, for relator.

When the State wrongfully converted the corporation money it became indebted *in law* to the corporation in the full amount of the money thus wrongfully appropriated by the State. *The law* under which the indebtedness arose is the same law under which in similar circumstances an indebtedness would have been created between individuals. There is not one law for the State and another law for its citizens. Anderson v. Robison, 111 Texas, 402, 229 S. W., 459, 238 S. W., 883.

In answering the question as to what is meant by *pre-existing law,* it must be borne in mind that the Constitution does not forbid an appropriation to pay a claim "when the

same shall not have been provided for by pre-existing *statute*." The law of the land, within the conception of the authors of the Constitution and of the people of the State at the time of the adoption of the Constitution, was not to be found exclusively in statutory and constitutional provisions. The great body of the law by which the rights and liabilities of parties were made to depend was to be found then, as it is now, in the common law as expounded in the court decisions. The common law has been a part of our jurisrudence since the days of the Republic of Texas. State v. Elliott, 212 S. W., 695; Chesapeake & Del. Canal Co. v. United States, 223 Fed., 929; United States v. Beebee, 17 Fed., 40; Lithograhic Co. v. Sarony, 111 U. S., 53; Thiesen v. Robison, 117 Texas, 489, 8 S. W. (2d) 646; Story's Com. on the Constitution, sec. 407.

*James V. Allred,* Attorney General, *Sidney Benbow,* Assistant Attorney General, for respondents.

The Act of the Forty-third Legislature, p. 816, is void in so far as it affects relator's claim, because the Legislature has singled out the relator and certain other corporations similarly situated, of a particular class, and allowed their claims, and denied to other corporations of the same class and similarly situated their claim, all of which is in violation of Article 1, section 3, of the Constitution. Cathey v. Weaver, 111 Texas, 515, 242 S. W., 447; Altschul v. State, 72 Ore., 591, 144 Pac., 124; Sirrine v. State, 132 S. C., 241, 128 S. E., 172.

Said Act of the Legislature is void for the reason that in appropriating money to pay the claim of relator and other corporations similarly situated it constitutes a special law, in violation of Constitution, Article 3, section 56. City of San Antonio v. Y. M. C. A., 285 S. W., 844; Phil H. Pierce Co. v. Watkins, 114 Texas, 153, 263 S. W., 905.

Said Act was void for the reason that at the time the appropriation was made there was no pre-existing law as required under Article 3, section 44 of the Constitution, and to pay the same would constitute a grant of public funds for a private purpose in violation of Article 3, section 51, and Article 16, section 6, of the Constitution. State v. Haldeman, 163 S. W., 1020; State v. Wilson, 71 Texas, 291, 9 S. W., 155; Terrell v. Middleton, 187 S. W., 367, writ of error refused, 108 Texas, 14, 191 S. W., 1138.

That where filing fees are paid voluntarily there is no obligation on the part of the State to refund same. Authorities cited above and Galveston City Co. v. Galveston, 56 Texas, 486; City of Houston v. Fesser, 76 Texas, 365.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding instituted by Austin National Bank as relator, against George H. Sheppard, State Comptroller, and Charley Lockhart, State Treasurer, as respondents. The facts are undisputed. They are as follows:

At all times, including and since March 7, 1919, Barber Asphalt Company has been a foreign corporation, duly incorporated under the laws of West Virginia, with a permit to do business in this State. On said date the company filed with the Secretary of State of this State its application for a permit to do business in Texas. This application was accompanied with a certified copy of its charter, and all amendments thereto up to this time, as required by law. On the above date the capital stock of such company was seven million dollars and it paid to the Secretary of State a filing fee or tax of $2500.00. This was the maximum fee or tax required by law to be paid by foreign corporations. On payment of the above fee or tax the Secretary of State, on the date above mentioned, issued to the asphalt company a permit to do business in this State.

About March 31, 1922, the asphalt company amended its charter, and increased its capital stock from seven million to ten million dollars, and duly filed such amendment in the office of the Secretary of State of West Virginia; whereupon that officer approved such amendment and issued his certificate showing his action.

In due time, after the filing and approval of the above amendment in West Virginia, the asphalt company tendered to the Secretary of State of this State a certified copy of its amended charter, with the request that same be filed in his office as required by our law. When the amended charter was tendered to him the Secretary of State demanded an additional filing fee of $2500.00, and refused to receive or file such amendment unless and until such fee was paid. The asphalt company protested the payment of such fee and contended that it was not due to be paid under our law, and that the Secretary of State was acting under a mistake of law in making the demand. The protest of the asphalt company was unavailing, and it then paid the fee.

After the happening of the above events it was determined by our Supreme Court that:

"Having received a permit to do business in the State, good for ten years, on its compliance with the statutes (Rev. Stats., 1925, Ch. 19, Title 32) and having paid therefor and on the

filing of subsequent amendments increasing its capital stock, fees amounting to $2500, based on amount of such original capital stock and increase, the corporation was entitled to have filed by the Secretary of State further amendments increasing such stock, without payment of further charges based on such increase. This duty of the Secretary being merely ministerial it is here enforced by mandamus."

The above holding is quoted from the syllabus in the case of General Motors Acceptance Corporation v. McCallum, 118 Texas, 46, 10 S. W. (2d) 687.

■ From the above it is evident that the asphalt company was entitled to have its amendment filed without the payment of the second fee of $2500.00, and the Secretary of State acted under a mistake of law in refusing to file such amendment until the additional fee was paid. It is evident therefore that the transaction resulted in the State receiving money into its treasury that it did not own and was not entitled to receive.

It appears that the asphalt company presented its claim for the refunding to it of the above $2500.00 to the Claims Committee of the 43rd Legislature. The committee approved the claim and included same in the Miscellaneous Claims Bill of that Legislature. This bill was duly passed by the Legislature and approved by the Governor, and is now in effect if it is a valid act. H. B. 919, p. 816, ch. 237, Acts Reg. Ses. 43rd Leg., 1933. The above claims bill contains numerous items, some of them refunding taxes of like character as this, and some making appropriations to pay claims of different characters.

After the above act became effective the Comptroller issued his warrant to cover the above appropriation drawn on the general revenue fund and payable to the asphalt company in the sum of $2500.00. The asphalt company duly assigned the warrant to relator, and it is now the legal and equitable owner and holder of the same. The bank presented the warrant to the Treasurer for payment, which was refused by that officer on the ground that the Comptroller had instructed him not to pay same, and on the further ground that the Attorney General had advised that such warrant was invalid. This mandamus proceeding followed.

The respondents have duly answered, and contend that the appropriation on which this warrant was issued is unconstitutional, illegal and void for reasons which we will now discuss and decide.

Respondents contend that this warrant, and the appropriation upon which it is based are unconstitutional and void be-

cause, under the undisputed facts, the Legislature has singled out the asphalt company and a number of other corporations asserting claims of a like class, and allowed their claims, while at the same time it refused to make appropriations to pay claims of the same class presented by numerous other corporations. The respondents contend that such facts render this appropriation class legislation in contravention of Section 3 of Article 1 of our State Constitution. We take the facts alleged to be true.

■ In our opinion the above contention should be overruled. Of course if it should be held that the Legislature has power to make an appropriation to pay this claim it must follow that it has power to pay every other claim of the same class; but the mere fact that the Legislature may make an appropriation to pay one or more claims of a class, while at the same time it fails to appropriate money to pay other like claims, does not render the appropriation made class legislation within the meaning of Section 3 of Article 1 of our State Constitution.

■ Respondents contend that this appropriation is in violation of Section 56 of Article 3 of our State Constitution. That constitutional provision deals with local or special laws. Obviously this appropriation is not a local law. The terms "special" and "local" are used in the same sense in this constitutional provision. Lastro v. State, 3 Texas Crim. App., 363.

■ Respondents contend that this appropriation is in violation of Section 44 of Article 3 of our State Constitution. This presents a very important question. The constitutional provision involved reads as follows:

Sec. 44. "The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same, nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

So far as applicable to this case the above constitutional provision may be read as follows:

"The Legislature * * * shall not grant * * * by appropriation or otherwise, any amount of money out of the treasury of

the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law."

It will be noted that the above constitutional provision applies to "any individual." Obviously a private corporation is "any individual" within its meaning.

By its express words the constitutional provision under consideration in no uncertain terms prohibits the Legislature from appropriating state money to "any individual" unless such appropriation shall have been provided for by a "pre-existing law." We interpret this to mean that the Legislature cannot appropriate State money to "any individual" unless, at the very time the appropriation is made, there is already in force some valid law constituting the claim the appropriation is made to pay a legal and valid obligation of the State. By legal obligation is meant such an obligation as would form the basis of a judgment against the State in a court of competent jurisdiction in the event it should permit itself to be sued. Nichols v. State, 32 S. W., 452 (Civ. App., writ ref.); State v. Haldeman, 163 S. W. 1020 (Civ. App., writ ref.); State v. Wilson, 71 Texas, 291, 9 S. W., 155.

In connection with the above the case of Kilpatrick v. Compensation Claim Board (Civ. App.), 259 S. W., 164, seems to hold that a mere moral obligation will authorize an appropriation by the Legislature. No writ was applied for in that case, and it never received the sanction of this court. The Kilpatrick case cites Weaver v. Scurry County (Civ. App.), 28 S. W., 836; Chambers v. Gilbert (Civ. App.), 42 S. W., 630, and State v. Elliott (Civ. App.), 212 S. W., 695. We have carefully examined these authorities and in our opinion none of them support the holding that a mere moral obligation will support an appropriation of State money to an individual.

As already noted the constitutional provision under discussion uses the term "pre-existing." It is the contention of respondents that such term means a direct "pre-existing statuatory law." Of course if we should give this constitutional provision such a construction we would be compelled to strike down this appropriation. Relator does not even contend that there existed any direct statutory law authorizing this appropriation at the time it was made. The relator, however, does contend that there existed at the time this appropriation was made a "pre-existing law" authorizing its payment. In regard to this matter relator advances the proposition that the State legally owed the asphalt company the refund of this money at the time this appropriation was made under the common law. It is then

pointed out that under Article 1, R. C. S. of Texas, the common law is expressly made the law of decision in this State where it is not inconsistent with our Constitution and laws. It is our opinion that a common law right is a right under a "pre-existing law" within the meaning of the constitutional provision under discussion here. State v. Elliott, 212 S. W. 695 (Civ. App. writ ref.).

■ We shall now proceed to determine whether this claim was supported by "pre-existing law" at the time this appropriation was made. By this we mean we will now determine whether this claim was a legal obligation against the State at such time. In determining this question we deem it proper to announce certain applicable rules of law. They are as follows:

1. A person who voluntarily pays an illegal tax has no claim for its repayment. 26 R. C. S., p. 455, No. 411; City of Houston v. Feeser, 76 Texas, 365; Galveston City Co. v Ci.ty of Galveston, 56 Texas, 486; Gaar Scott & Co. v. Shannon (Civ. App. writ ref.), 115 S. W., 361, and authorities cited on page 364. This case was affirmed by the U. S. Sup. Ct., 223 U. S., 468.

2. A person who pays an illegal tax under duress has a legal claim for its repayment. In this connection it is held in some jurisdiction that a taxpaper cannot maintain an action to recover taxes illegally exacted after the money has gone into the treasury and been paid out by the disbursing officers, but we think the sounder rule is to the contrary. 26 R. C. L., p. 454, No. 410; Note 11 L. R. A. (N. S.), 1106. In such instances the money never becomes the property of the State as against the real owner.

3. Duress in the payment of an illegal tax may be either express or implied, and the legal duty to refund is the same in both instances. 26 R. C. L., p. 457, No. 413.

4. When the statute provides that the taxpayer who fails to pay the tax shall forfeit his right to do business in the State, and have the courts closed to him, he is not required to take the risk of having his right to resort to the courts disputed and his business injured while the invalidity of the tax is being adjudicated. 26 R. C. L., p. 458.

5. In the absence of a specific statute to the contrary, the fact that an illegal tax is or is not paid under protest is of no importance. 26 R. C. L., p. 459, No. 414.

Under Article 1529, R. C. S., this company was required to file with the Secretary of State a certified copy of its charter. This it did. This entitled it to transact business in this State

for a period of ten years from the date of such filing. Under Article 3914 this company was required to pay a filing fee or tax of $2,500 when it originally filed its articles of incorporation. Under Article 1537 this company was required to file with the Secretary of State the amendment to its charter above described. Under Article 1536 this company was compelled to file the above amendment or forfeit its right to do business in this State or to maintain suits in the courts of this State.

The fee of $2,500.00 paid for filing the amended charter was demanded and paid while the asphalt company's ten-year permit to do business was in full force. It did not legally owe such fee. General Motors Acceptance Corporation v. McCallum, supra. If the asphalt company had refused to pay such fee it could not have gotten its charter amendment filed without resorting to the courts, and would have run the risk of having its right to do business in this State, and its right to resort to the courts of this State called in question during the litigation. Also during such period it would have run the risk of having its business greatly hampered and injured. Under such a record we hold that the asphalt company paid this tax or fee under implied duress, and not as a volunteer. We further hold that under the rules of law above announced the State is legally liable to repay this tax so illegally demanded and collected.

Finally we wish to say that we do not intend to intimate that the Secretary of State committed any intentional wrong in exacting the payment of this fee or tax. At the time he did so the McCallum case, supra, had not been decided by the Supreme Court, and he acted under a mistake of law, but in good faith.

The mandamus is granted as prayed for.

Opinion adopted by the Supreme Court, May 2, 1934.