

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 12, 1951

Hon. Bascom Giles
Commissioner
General Land Office
Austin, Texas

Opinion No. V-1204

Re: Legality of refunding lease
rental payments made dur-
ing pendency of litigation
relating to the validity of
such lease or the authority
of the Land Commissioner
to lease the land covered
thereby.

Dear Sir:

Your letter requesting an opinion is as follows:

"I desire your official opinion on the question of
refunding payments now held in suspense which were
tendered to this office by various oil companies for
rentals on oil and gas leases covering lands in the
Gulf of Mexico, which have been in litigation in the
Supreme Court of the United States, and return of 'rent-
als paid by Sun Oil Company and held in suspense cov-
ering oil and gas leases on lands in Laguna Madre in-
volved in litigation in Civil Action No. 614, United
States District Court, Corpus Christi Division. Some
of the rentals paid to this office for the Gulf of Mexi-
co lands were paid under protest and held in suspense
by this department, and some were paid without pro-
test and held in suspense for a judicial determination
as to whether or not Article 5421i of Vernon's Anno-
tated Civil Statutes relieved the lessees from payment
of rentals during the pendency of the litigation above
named.

"There follows a list of rental payments made on
oil and gas leases in the Gulf of Mexico, showing wheth-
er or not such payments were made under protest:

| Name | Date | Amount | |
|---|---|---|---|
| Humble Oil & Re-fining Co. | 11-5-49 | $49,371.00 | Protested |
| Stanolind Oil & Gas Co. | 11-7-49 | 56,000.00 | Protested |
| Superior Oil Co. & Tidelands Oil. Corp. | 10-19-49 | 35,040.00 | Protested |
| Phillips Petroleum Co. | 10-8-49 | 2,686.00 | Not Protested |
| Sun Oil Company | 10-15-49 | 1,494.00 | Not Protested |
| The Texas Company | 11-5-49 | 17,020.00 | Protested |
| Sun Oil Company | 11-28-49 | 2,880.00 | Not Protested |
| Oil Drilling Co., Inc. | 11-29-49 | 480.00 | Not Protested |
| Sun Oil Company | 6-2-50 | 320.00 | Not Protested |
| Brazos Oil & Gas Co. | 10-7-50 | 1,664.00 | Not Protested |
| Sun Oil Company | 10-16-50 | 1,494.00 | Not Protested |
| Phillips Petroleum Co. | 11-6-50 | 2,686.00 | Not Protested |
| Oil Drilling Co., Inc. | 12-4-50 | 480.00 | Not Protested |
| Superior Oil Company & Tidelands Oil. Corp. | 12-5-50 | 35,040.00 | Protested |
| Sun Oil Company | 1-4-51 | 2,880.00 | Not Protested |

"The above enumerated rental payments total $209,535.00, which amount has been and is now held in suspense, and requests for refunds have been made in writing by two of the companies and inquiries have been made by other parties regarding the refunds of these rentals.

"On January 28, 1950, Sun Oil Company tendered under protest the sum of $16,458.00 and on January 26, 1951 tendered under protest the sum of $16,458.00 for rentals on oil and gas leases covering lands in Laguna Madre in litigation on appeal under Civil Action No. 614. This total of $32,916.00 has been and is now held in suspense, and I have been requested by letter dated March 21, 1951, to refund these rentals to Sun Oil Company in light of the case styled, The Ohio Company, et al vs. Bascom Giles, et al, 235 SW 2d 630,

Motion for Rehearing on which was denied February 5, 1951.

"It is necessary that I have your official legal opinion as to whether or not these payments should be refunded, as I have requests for refunds pending in this office."

The above rental payments were placed in a suspense fund by your department under Article 4388, V.C.S., which provides:

"The State Treasurer shall receive daily from the head of each Department, each of whom is specifically charged with the duty of making same daily, a detailed list of all persons remitting money the status of which is undetermined or which is awaiting the time when it can finally be taken into the Treasury, together with the actual remittances which the Treasurer shall cash and place in his vaults or in legally authorized depository banks, if the necessity arises. The report from the General Land Office shall include all money for interest, principal and leases of school, university, asylum and other lands. A deposit receipt shall be issued by the Comptroller for the daily total of such remittances from each Department; and the cashier of the Treasurer's Department shall keep a cash book, to be called 'suspense cash book,' in which to enter these deposit receipts, and any others issued for cash received for which no deposit warrants can be issued, or when their issuance is delayed. As soon as the status of money so placed with the Treasurer on a deposit receipt is determined, it shall be transferred from the suspense account by placing the portion of it belonging to the State in the Treasury by the issuance of a deposit warrant, and the part found not to belong to the State shall be refunded. When deposit warrants are issued, they shall be entered in this cash book, as well as any refunds, and the balance shall represent the aggregate of the items still in suspense. Refunds shall be made in a manner similar to that in present use, except that separate series of warrants shall be used for making such refunds, to be called 'refund warrants,' and such warrants shall be written

and signed by the Comptroller and countersigned
by the Treasurer and charged against the suspense
funds to which they apply. Such warrants shall then
be returned to the Comptroller and delivered by him
to the person entitled to receive them."

The question of whether money held in suspension under Article 4388 can be recovered where the payment was not under protest, even though unlawfully exacted, does not appear to have been passed upon by the Texas courts. See Daniel v. Richcreek, 118 S.W.2d 935, 937 (Tex. Civ. App. 1938), an appeal from an interlocutory order appointing a receiver of a fund deposited by the Texas Racing Commission in the suspense account of the State Treasury under Article 4388. It was stated in the argument in that case before the Court of Civil Appeals "that the Treasurer and Comptroller would contend, upon the merits of the case, that the fees /collected by the Commission from jockeys/ were voluntarily paid, or in any event without protest, and therefore could not be recovered by those paying them, however illegal might have been their exaction." Although the Court was not required to pass upon this question on the appeal on the merits, having decided that the fund was not public in character and that the State had no interest therein, the Court indicated that a voluntary payment of money held in suspension under Article 4388 might bar recovery. Daniel v. Richcreek, 146 S.W.2d 206 (Tex. Civ. App. 1940, error dism., judgm. cor.). The Court said:

"If the Commission, acting under a presumed
authority, had attempted to levy an excise tax or privi-
lege fee for some public purpose connected with the
act or otherwise, the question then would arise whether
such taxes or fees might thereafter be recovered by
those voluntarily paying them. It is at least plausible
that recovery would be denied under the provisions
of Art. 4388, since the payments were not (by those
making them) deposited in the treasury suspense ac-
count under protest as provided in that article. See
Rainey v. Malone, Tex. Civ. App., 141 S.W.2d 713.
. . ." (146 S.W.2d at 208.)

However, we do not find it necessary to pass upon that question in this opinion, since we think it is clear that the rental payments in question were made involuntarily.

Article 5372, V.C.S., provides that

"If any person, firm or corporation. . . shall fail or refuse to make the payment of any sum within thirty days after it becomes due, . . . the rights acquired under the . . . lease shall be subject to forfeiture by the Commissioner, and he shall forfeit same when sufficiently informed of the facts which authorize a forfeiture, and the oil and gas shall be subject to sale . . ."

As stated in the brief for the State in Ohio Oil Co. v. Giles, 235 S.W.2d 630 (Tex. Sup. 1950), "it is and has been the uniform interpretation and practice of the Commissioner of the General Land Office and his predecessors in office that the statutory order of forfeiture is required to be entered upon the failure of a lessee to pay the stipulated rentals within 30 days of the date provided in the lease. . . . This interpretation and practice is generally known among lessees of the State, and was generally known at the time the instant leases were offered and awarded."[1] Thus, "the lessees had to pay the rentals in order to keep the leases in force." Ohio Oil Co. v. Giles, supra, at 636.

The rentals having been paid under an express or implied threat of forfeiture of the leases, we think the rule most recently discussed by the Supreme Court of Texas in Crow v. City of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922 (1948), is applicable. In permitting a cab company to recover certain fees paid under an invalid ordinance, which fees, although paid to the city without protest, would not have been paid except for clauses in the franchise ordinance providing for cancellation of the franchise for nonpayment, the Court said:

"The early common-law doctrine of duress has been expanded (17 Am. Jur., p.875) and many courts have adopted the modern doctrine of 'business compulsion,' under which 'it is established that where by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interest it is necessary to make a

---

[1] Reply to Relators' Brief in Support of Motion for Leave to File Petition for Writ of Mandamus, p. 17.

payment of money which he does not owe and which in equity and good conscience the receiver should not retain, the payment may be recovered.' 40 Am. Jur., p. 831. A view similar to that of 'business compulsion' has been taken by our courts in cases involving the recovery of illegal taxes or fees; and 'it is immaterial to the right of repayment,' in the absence of statutory provision to that effect, 'whether or not an illegal tax is paid under protest.' National Biscuit Co. v. State, supra; Austin Nat. Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242; Cooley on Taxation, Vol. 3 (4th Ed.), p. 2566." (209 S.W.2d at 924.)

In Texas Power & Light Co. v. Doering Hotel Co.,147 S.W.2d 897, 905 (Tex. Civ. App. 1941), aff. 139 Tex. 351, 162 S.W.2d 938, this rule is stated as follows:

". . . But where the payee has the power to enforce such payment, or on failure to pay, to work great financial loss, business disadvantage, or irreparable injury to the payor, duress occurs, even though it be not actually attempted to be exercised. Appellant had the power, under its contract with Doering, to cut off his service for nonpayment of its demand, and thus paralyze his business. Nonpayment by him necessarily invoked that potential hazard. In such case, the Supreme Court has held in Austin National Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242, and in National Biscuit Co. v. State, 134 Tex. 293, 135 S.W.2d 687, 692, that in the face of such existing power, payments so made are made under implied duress even though the payor did not make them under protest. See, also, Edwards v. Williams, Tex. Civ. App., 93 S.W.2d 452; Ward v. Scarbrough, Tex. Com. App., 236 S.W. 434. . . ."

See, also, Dale v. Simon, 267 S.W. 467 (Tex. Comm. App. 1924), and Kenyon v. United Salt Corp., 129 S.W.2d 402 (Tex. Civ. App. 1937), in which it was held that money unlawfully obtained could be recovered as having been paid under duress where the payment was made under a threat to declare a forfeiture of the lease, which could have been done without resort to the courts.

In the light of the above cases, it is our opinion that all of the rental payments listed in your letter are subject to refund under Article 4388 if they were unlawfully collected from the State's lessees.

The determination of the status of moneys held in suspense under Article 4388 is primarily a matter for the courts, unless the Treasurer and Comptroller voluntarily assume the responsibility of making such determination. In Daniel v. Richcreek, 118 S.W.2d 935, 937, the following was said with reference to refunds under this article:

"The fund was placed in the 'suspension account' of the Treasury by state officials acting under Art. 4388, and can only be drawn out of said account when and in the manner prescribed by said Article, -- that is: 'as soon as the status of money so placed *** is determined,' when it shall be transferred, if belonging to the state, by deposit in the Treasury, and if found not to belong to the state to be 'refunded.' In either case the method is by warrant signed by the Comptroller and countersigned by the Treasurer. The Article is explicit in requiring the 'transfer' to be made 'as soon as' which necessarily implies 'not before' the 'status' of the money is 'determined.' Clearly the word 'status' includes every essential fact to its proper disposition, from the viewpoint of the Treasurer, its then custodian. ......

"Under the Article no right to demand the money from the Treasurer could properly be asserted until its 'status' is 'determined.' There can be no serious question but that 'determined' in the sense of the Article means judicially determined. In any event, such is its necessary meaning where the Treasurer and Comptroller, each of whom must act to effectuate a transfer of the money, do not voluntarily assume the responsibility of making such determination. To compel their action a judicial proceeding is essential, and this means a plenary and not a mere interlocutory proceeding."

The right of the State to collect rentals during the pendency of litigation relating to the validity of such leases or the

authority of the Land Commissioner to lease the lands covered thereby was involved in the recent case of Ohio Oil Co. v. Giles, 235 S.W.2d 630 (Tex. Sup. 1950). That was an original mandamus proceeding in which the Ohio Oil Company and Melben Oil Company sought to compel the refund of $123,360 in rentals paid to the Land Commissioner and to require him "to recognize certain mineral leases as valid and subsisting, without the payment or necessity to pay any rentals for the period during which" the leases were involved in litigation. Article 5421i, under which Ohio and Melben sought this refund, provides:

> "The running of the primary term of any oil, gas, or mineral lease heretofore or hereafter issued by the Commissioner of the General Land Office, which lease has been, is, or which may hereafter become involved in litigation relating to the validity of such lease or to the authority of the Commissioner of the General Land Office to lease the land covered thereby, shall be suspended, and all obligations imposed by such leases shall be set at rest during the period of such litigation. After the rendition of final judgment in any such litigation the running of the primary term of such leases shall commence again and continue for the remainder of the period specified in such leases and all obligations and duties imposed thereby shall again be operative; provided such litigation has been instituted at least six (6) months prior to the expiration of the primary term of any such leases."

The Court upheld Article 5421i insofar as it related to leases executed after its enactment and said that this Article "relieves the lessees of the obligation to pay rentals during the" period of litigation. (235 S.W.2d at 637. Emphasis added.) Writ of mandamus was issued by the Court "commanding Bascom Giles, R. S. Calvert, and Jesse James to refund to relators the sum of $123,360, the amount of rentals paid by relators to Bascom Giles under protest on November 7, 1949, for the ensuing year."

However, the Court in the Ohio case did not pass upon the question of whether the rentals which would have been due under the leases but for their suspension by Article 5421i during the period of litigation will become due and payable upon the termination of the litigation. The Court merely held that the lessee was relieved of

the obligation to pay rentals <u>during</u> the period of litigation, finding it unnecessary to decide whether Article 5421i forever relieves State lessees of the obligation to pay rentals <u>for</u> the period of litigation.

In view of the opinion of the Supreme Court in the <u>Ohio</u> case, we are compelled to hold that the State had no right to require the payment of rentals under State leases during the period that such leases were involved in litigation relating to their validity or to the authority of the Land Commissioner to lease the land conveyed thereby. The rental payments listed in your letter having been made during the period that the leases were involved in litigation within the meaning of Article 5421i, these payments should be refunded to the lessees under Article 4388. As you know, this office had previously differed with the conclusion reached by the Supreme Court in the <u>Ohio</u> case, and we so argued in the trial of that case, but the Court's opinion is now binding and must be followed.

This does not mean that the State does not have the right, if the lessees choose to hold the leases after the termination of the litigation involving the leases, to demand the payment of the rentals which fell due during the litigation but were suspended by Article 5421i. As above stated, the right of the State to collect such rentals at that time was not passed upon by the Supreme Court in the <u>Ohio</u> case. It may be that if the title of the State to the "tideland" area is finally restored by congressional action, the rentals on leases in that area can be recovered if the lessees elect to hold the leases.

It is our opinion, therefore, that the rental payments listed in your letter should be refunded to the respective lessees, subject to the right of the State to require their repayment if the lessees elect to continue to hold the State leases after the termination of the litigation involving the leases.

For your guidance in the future, we call your attention to Senate Bill 146 of the 52nd Legislature, effective June 15, 1951, which clarifies Article 5421i by adding thereto the following:

"... Provided, further, that the lessee shall pay all annual delay rentals and any royalties which accrue during the period of litigation the same as during any

other period of the extended primary term. Such rentals paid during the litigation period shall be held in suspense and returned to the lessee in the event the State is unsuccessful in any such litigation."

## SUMMARY

Under the Supreme Court's ruling in Ohio Oil Co. v. Giles, 235 S.W.2d 630 (1950), the State had no right to collect rentals from its lessees during the period that the leases were involved in litigation relating to the validity of such leases or the authority of the Land Commissioner to lease the lands covered thereby. These rentals, which were paid under an express or implied threat of forfeiture and which are now being held in suspense under Article 4388, V.C.S., should be refunded to the respective lessees, subject to the right of the State to require their repayment if the lessees elect to continue to hold the State leases after the termination of the litigation involving the leases.

Future payments of rentals will be governed by Senate Bill 146, Acts 52nd Legislature, effective June 15, 1951, passed by the Legislature after the decision in Ohio Oil Co. v. Giles, supra, which provides for their continued payment during the period of litigation, subject to being returned to the lessee in the event the State is unsuccessful in the litigation.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

Charles D. Mathews
First Assistant

Price Daniel
Attorney General

By Jesse P. Luton, Jr.
Assistant

JPL:mf