TEXAS POWER & LIGHT COMPANY V. DOERING HOTEL COMPANY.

No. 7879. Decided May 20, 1942.
Rehearing overruled June 24, 1942.
(162 S. W., 2d Series, 938.)

*Burford, Ryburn, Hincks & Charlton* and *Logan Ford,* all of Dallas and *Cox & Brown,* of Temple, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the payments made subsequent to a settlement in 1932 were not voluntary and that the hotel company had the right to assume that other institutions and hospitals were being billed on the same basis that it was. Taylor v. Hall, 71 Texas 216, 9 S. W. 141; Swift & Co. v. Columbia Gas & Elec. Ry. Co., 17 Fed. (2d) 46; Pitts v. Elser, 87 Texas 347, 28 S. W. 518.

*Lee Curtis,* of Belton, *Elmer Ware Stahl* and *A. R. Sohn,* both of San Antonio, for defendant in error.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was instituted by the Doering Hotel Company against the Texas Power & Light Company to recover for overcharges due to discrimination in the sale of electric current to it at Temple, Texas. Trial was to a jury on special issues, and all of such issues were answered in favor of the Doering Hotel Company. On such verdict of the jury, judgment was entered against the Texas Power & Light Company, in favor of Doering Hotel Company, for $14,468.50 This judgment was affirmed by the Court of Civil Appeals. The opinion of that court contains a full statement of the evidence and the contentions of the parties. 147 S. W. (2d) 897. This Court granted a writ of error.

Hereinafter the Doering Hotel Company will be referred to as Doering, and the Texas Power & Light Company will be referred to as T. P. & L.

The Doering Hotel was constructed by Frank A. Doering in 1928, who owned and managed same. In 1938 the Doering Hotel Company was incorporated, and all the assets of the hotel were transferred to that corporation. The management and operation of the hotel continued practically the same as before the incorporation. Doering had entered into a contract with T. P. & L. for the furnishing of light and power to the hotel. T. P. & L. was the only public source of electric current in Temple, Texas. The plans for the hotel called for a number of vaults or compartments in the basement, and Doering agreed that the T. P. & L. might have the exclusive use of one of these vaults in which to place its equipment to serve the hotel with electric current. The plans did not specify where the meter for measuring the current was to be placed, but merely stated that it was to be placed "at the transformer vault." The contract reads in part as follows:

"Subject to the terms and conditions herein stated, the Company will, * * * deliver to the Customer * * * electric power and energy * * * and energy so delivered shall be measured by a meter or meters to be installed by the Company as herein provided at transformer vault * * *

\*　　\*　　\*　　\*　　\*　　\*

"The Customer will provide on his premises at points to be mutually agreed upon, a suitable space for the installation of such equipment as Company may deem necessary to enable it to deliver the power and energy herein described."

This suit was filed in May, 1938, and the claim for over-charge and discrimination covers the period from March 30, 1928, when the original contract was made, to May 20, 1938. The cause of action is based upon two elements. One relates to the method of metering the current for which Doering was charged, and the other relates to the fact that Doering was charged a higher rate by T. P. & L. for current than it charged other customers similarly situated. Regarding this second element, it is contended that other customers, similarly situated, were charged two cents per kilowatt hour (which for brevity is indicated KWH), whereas Doering was charged what was known as an L..P. rate. The L. P. rate provided for a minimum fixed charge, at four cents per KWH until a certain amount of current was used, and thereafter the charge was based on a sliding scale graduated downward as the total current con-sumption increased. Under this method the charge for the quantity of current used by Doering exceeded the two cents per KWH charged other consumers similarly situated.

The jury made the following findings:

1. That the T. P. & L., between 1932 and May 20, 1938, fur-nished electric current to other consumers similar to Doering at a flat rate not exceeding two cents per KWH.

2. That not until May 7, 1936, after the 1932 settlement, did Doering discover that he was being so discriminated against; and that during such time Doering, by the exercise of ordinary prudence, could not have discovered such fact.

3. That the officers and agents of T. P. & L., whenever the matter of rates was brought up after the 1932 settlement, always assured Doering that he was receiving the best rate of T. P. & L. for consumers in his class; and that Doering believed and relied upon such assurances.

4. That during said ten-year period T. P. & L. furnished current to other consumers similar to Doering which it metered secondary; and that prior to May 7, 1936, Doering did not come into possession of facts which would have caused him to believe that he was being discriminated against in the method of metering; and that, by the exercise of ordinary prudence, he could not have discovered, prior to such date, that he was being so discriminated against.

5. That, as stated, T. P. & L. had furnished electric current to other consumers similar to Doering at a flat rate not exceeding two cents per KWH, and this was metered to them secondary, while that furnished to Doering was metered primary; and that the transformer loss, as between primary and secondary metering, was 10.4 per cent.

6. That the transformer losses in primary and secondary metering were not considered in the 1931 and 1932 settlements between T. P & L. and Doering.

7. That between May, 1932, and March, 1936, Doering did not know that Scott & White Hospital, Scott & White Dairy Farm, and King's Daughters Hospital, all at Temple, were being billed at a flat rate of two cents per KWH.

8. That prior to May 7, 1936, Doering did not know that the Kyle Hotel was being metered secondary; and that, prior to such date, by the exercise of ordinary prudence he could not have discovered that said hotel was being metered secondary.

There was no agreement that Doering was to receive a private transformer, nor was there an agreement as to whether the current would be metered primary or secondary. When electric current is metered primary, the meter is placed between the power company's lines and the transformer, so that the consumer is charged with all current entering the transformer, whether such current is ultimately used by the consumer or not. Current is metered secondary when the meter is placed between the transformer and the consumer's wiring, so that the consumer pays only for current actually used, and is not charged for current which is lost in the transformer.

In this instance T. P. & L. placed the meter in front of the transformer, so that Doering was metered primary. Under the undisputed evidence, there was some loss of current in the transformer. The amount of that loss was disputed, but, as stated above, the jury found it to be 10.4 per cent. There was evidence, and the jury also found, that other customers, similarly situated as Doering, were metered secondary.

Doering testified that he did not discover this alleged discrimination until 1936. But in 1931 he had discovered that at that time, although he was being charged an L. P. rate, on a graduated charge of from four cents to one cent per KWH de-

pending on the amount of current used, others, similarly situated, including a competing hotel in the same city, were receiving current at a flat rate of two cents per KWH. Upon demand by Doering, T. P. & L. entered into a settlement with him for this alleged discrimination. Again, in 1932, he ascertained that other consumers, similarly situated, were receiving the two cent rate, while he was forced to pay the higher L. P. rate. Another settlement was then consummated. Doering also testified, and the jury found, that in neither of these conferences was there any consideration of the discrimination because of primary and secondary metering.

The application for writ of error in this case was granted on the twentieth and twenty-first assignments of error, which, in effect, assert that there was no evidence to support the findings of the jury that Doering, in making payments after the 1932 settlement, was not aware that other consumers, similarly situated, were receiving a two cent rate and were being metered secondard. After a careful study of the voluminous record, we conclude that there is evidence to support those findings.

Doering testified that the 1932 settlement was participated in by a new local manager of T. P. & L., T. S. Wyche. Doering said that he felt he could trust Wyche; and after Wyche assured him that after 1932 there would be no more discrimination, he no longer distrusted T. P. & L. Doering said Wyche assured him that every one in the same classification would pay the same rate he was to pay; and "we considered the hospitals (other consumers) were in the same classification." He testified that he did not know from 1932 to 1936 that others had been permitted to remain on the two cent rate. As late as 1935 Wyche assured Doering that he was receiving the best rate possible for consumers of his class. In that year Doering had seen an advertisement of T. P. & L. in a local paper, to the effect that rates had been cut twenty to forty per cent. He inquired of T. P. & L. why his rate had not been cut. He was told that the rates referred to were for current used in homes, and did not apply to commercial users; and he was then assured that he was being treated the same as others in his class. He testified that between 1932 and 1936 he did not know that any consumer in Temple was getting the two cent rate.

On this and other testimony, the jury found that Doering did not know, until 1936, that he was being discriminated

against. The jury also found that he was told that he would be treated fairly, and that he believed these statements and relied on them; and that he did not pay the overcharges voluntarily with knowledge that others were being charged the two cent rate and were metered secondary.

In 1936, when Doering discovered that he was being discriminated against, he vigorously protested to T. P. & L. He demanded that he also be given the two cent rate. In 1937 he wrote a letter to the president of T. P. & L., demanding that he be given credit for the overcharges. Numerous conferences were held regarding these matters, but no agreement was reached. In 1937 he employed an engineer, and the engineer discovered the primary metering. Thereupon Doering made another protest, but without avail. He testified that he continued to pay his light and power bills after 1936, as rendered by T. P. & L., because it was the only public source of electric current in the city, and he was afraid that, if he became delinquent for a certain number of days, it would exercise its rights under the contract and cut off the current without notice.

■ The jury in this case decided all questions of fact against T. P. & L., and both the trial court and the Court of Civil Appeals held that the evidence supports the judgment of the trial court. Therefore this case presents a question of fact, and not a question of law, and this Court is not authorized to overturn the verdict of a jury when it is supported by the evidence. Article 1728, R. C. S. 1925; Schelb v. Sparenberg, 133 Texas 17, 124 S. W. (2d) 322; Anderson, Clayton & Co. v. State, 122 Texas 530, 62 S. W. (2d) 107; Merrell et ux. v. Dorothy Hume Timmons et vir, 138 Texas 250, 158 S. W. (2d) 278; Beer v. Landman, 88 Texas 450, 31 S. W. 805; 11 Tex. Jur., p. 871, sec. 113.

Under the statutes, as well as under the decisions of this State, T. P. & L., a public service corporation, cannot discriminate between its customers, similarly situated, in the matter of rates or charges. Article 1438, R. C. S. 1925; El Paso Elec. Co. v. Raynolds Holding Co., 128 Texas 495, 100 S. W. (2d) 97, 108 A. L. R. 744; 34 Tex. Jur., p. 719, sec. 17. The jury found, and its finding is supported by the evidence, that other consumers, situated similarly to Doering, were charged a different rate and were metered by a different method. Doering is therefore entitled to recover damages for such discrimination.

We have considered all the other assignments of error, and overrule them for want of merit.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 20, 1942.

Rehearing overruled June 24, 1942.