**Louis J. HEXTER et al., Appellants,**

v.

**Mary W. POWELL et al., Appellees.**

No. 17680.

Court of Civil Appeals of Texas, Dallas.

Dec. 10, 1971.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellants.

Ben Warder, Jr., Charles D. Mayes, Carter, Jones, Magee, Rudberg, Moss & Mayes, Donald Gay, Spafford, Gay & Whitham, Dallas, for appellees.

BATEMAN, Justice.

Our former opinion is withdrawn and the following substituted therefor.

This suit involves the construction of the Hexter Pension Plan and the rights of a former employee of Hexter Title & Abstract Company, Inc. upon the termination of that plan. The appellee Mary W. Powell sued the trustees of the Plan, her employer and Hexter Corporation, successor to Hexter Title & Abstract Company. She also named four other employees as involuntary plaintiffs pursuant to Rule 39.[1] Only two of these, Louise West and Edith P. Frost, appeared and they, together with Mary W. Powell, claimed that they were paid less than was due them under a proper interpretation of the Hexter Pension Plan. They are the appellees. The other two who were named as involuntary plaintiffs were dismissed without prejudice. The appellees West and Frost, since our

original opinion was delivered, have settled their claims and released the appellants. This opinion will therefore be concerned only with the controversy between appellants and the appellee Powell.

The original "Hexter Employees' Retirement Plan," herein referred to as the Prior Plan, was changed effective May 1, 1968, into one funded altogether by contributions from the said employer. The new Plan was administered by three trustees who were, at all times pertinent hereto, the appellants Louis J. Hexter, D. A. Hammans and Phillip D. McCullouch.

In Article XII of the Pension Plan, entitled "TERMINATION OF THE PLAN," it is provided *inter alia* in § 12.01 that the employer may terminate its obligations under the Plan at any time; and in § 12.02 that in such event "the Trustees shall, acting upon the advice of the Actuary of the Plan, direct that part or all of the assets of the Trust Fund held on account of the employees * * * shall be used to continue benefits in course of payment and to provide benefits for the following classes of employees or former employees with priority in the order named:

"(1) Distributions of vested interests under the Prior Plan. *Any distributions under this paragraph will reduce benefits payable to an employee under paragraphs (2) and (3) following.*

(2) Pensions or other benefits in course of payment to retired employees and joint pensioners of deceased retired employees, and immediate pensions for employees who have reached normal retirement age,[2] but have not retired at the date of the termination of the Plan.

(3) Pensions deferred to age sixty-five (65) for employees qualifying for vested pensions and early retirement benefits under the provisions of Article VII.

---

1. All references to Rules are to Vernon's Texas Rules of Civil Procedure, references to Articles are to Vernon's Annota-

ted Texas Civil Statutes, and all italics are ours, unless otherwise indicated.

2. Defined elsewhere in the Plan as age 65.

After the vested interests under the Prior Plan have been paid, *if the funds available in categories (2) and (3) are determined by the actuary to be insufficient to provide the benefits, the fund and benefits shall be apportioned among the various employees* in proportion as to the actuarial value of each employee's accrued credits.

(4) If the cost of providing for the benefits in categories (1), (2) and (3) is determined by the Actuary to be less than the total funds available, the balance will be used to the extent available to provide pensions deferred to age sixty-five (65) for all other employees on the payroll of the affected Employer company or companies and eligible for benefits under the Plan at the time of termination of the Plan in proportion to the actuarial value of each employee's accrued credits."

Other pertinent sections of Article XII are:

"12.04

Except as may be contrary to the terms of the Trust Agreement, the Trustees in their sole discretion acting with the advice of the Actuary may provide benefits as follows:

(1) By continuation of the Trust Fund, for such benefits as are calculated to be not less than $20 per month upon the attainment of age 65.

(2) Through the purchase of annuities from an insurance company, with the amount of the benefit determined by a premium equal to the actuarial value of each employee's benefit.

(3) *By a distribution in a single sum of the actuarial value of* each employee's benefit.

(4) By a combination of (1), (2) and (3)."

In the early part of 1968 the title and abstract business was sold, but the purchaser declined to take over the Pension Plan. Hexter's company continued to operate the business until May 1, 1968, at which time the purchaser took it over, and the Pension Plan was terminated by the employers. R. Paul Schrader, an actuary, was given the task of determining actuarily the respective intersts of the various employees in the assets of the Trust Fund of the Plan, and on February 14, 1968 Schrader wrote Hexter a letter in which he listed employees in three categories, with a certain amount opposite each name as the value of the interest of that employee in the assets. Under the heading "Category 1" he listed seven employees as being entitled to "Vested Benefits for Prior Plan Participants"; then under the heading "Category 2—Currently Retired Participants and Employees Age 65," he listed nine employees. He then listed, under the heading "Category 3—Vested Participants," five employees and the single sum actuarial values of their respective interests totaling $40,832.90. The appellee was among those listed in this Category 3 as follows:

| "M. Powell | $18,924.17 |
| L. West | 6,348.76 |
| E. P. Frost | 9,300.51 * |
| P. Battle | 3,609.45 * |
| A. Rose | 2,700.01 * |
| | $40,832.90 |

\* Balance of value of accrued benefit after vested benefit from prior plan paid."

The letter then proceeded:

"Based upon the Trustee's Statement as of January 31, 1968, it appears that the funds would be sufficient to pay full benefits in Categories 1 and 2, but the remaining assets would be pro-rated among the Category 3 participants. Of course, the Category 4 participants (all other employees) would receive no benefits."

Article VII, entitled "Early Retirement," Section 7.02, under the subheading "Deferred Pension," contains this language:

"An employee may retire of his own volition, *or he may be retired by the Employer in its discretion* at any time

after he completes twenty (20) or more years of credited service, or after he completes ten (10) or more years of credited service and after attaining the age of sixty (60) * * *. Such an employee will be entitled to a pension commencing on his normal retirement date."

The assets of the Trust available for payment of pensions were sold at some time after May 1, 1968 and final distribution made on or about December 20, 1968 of the total sum of $233,886.02. Those employees in Category 1 were paid a total of $9,664.87, and a total of $221,427.09 was paid to the nine employees in Category 2, being those who were currently retired or still employed but more than 65 years of age. This left only $2,794.06 to be distributed and paid pro rata among those in Category 3.

Thus, it is seen that the trustees followed the actuary's construction of the Plan, viz., that after payment of employees in Category 1 in full (concerning which no one complains), and the payment of those in Category 2 in full, the remaining assets, if any would be prorated among those in Category 3. Consistent with this interpretation, the trustees tendered appellee Powell $1,293.33, which she refused.

Appellee contends, first, that the employer's act in voluntarily terminating the business in which she was employed, as well as the Pension Plan, at the close of business on April 30, 1968, constituted a retirement of all the employees within the terms and correct construction of the Plan; that appellee was thereby automatically and involuntarily retired on that date, and was entitled pro rata to the same treatment as those employees listed in Category 2. She also alleged, in the alternative, that if her construction of the Plan should be held to be incorrect, she was prevented from voluntarily retiring prior to May 1, 1968 by certain misrepresentations and concealment by appellants as to her rights upon termination of the Plan, entitling her not only to the same actual damages she alleged was due her under her interpretation of the Plan, but also to exemplary damages. In her second trial amendment, which the trial court permitted her to file on the day the judgment was signed, approximately one month after the verdict, the appellee eliminated the alternative nature of her tort action and alleged that, regardless of the proper construction of the Pension Plan, she had been damaged by said misrepresentations and concealments in the sum of $17,327.19.

The trial court rendered judgment for appellees upon a jury verdict. Both actual and exemplary damages were awarded, with interest on the actual damages at 10 percent per annum from the date of distribution. The judgment awarded to appellees the following amounts:

| Name | Actual Damages | Exemplary Damages | Total |
| --- | --- | --- | --- |
| Mary W. Powell | $17,327.19 | $16,050.00 | $33,377.19 |
| Edith Frost | 8,227.02 | 7,550.00 | 15,777.02 |
| Louise West | 5,742.74 | 5,650.00 | 11,392.74 |
| Totals | $31,296.95 | $29,250.00 | $60,546.95 |

A careful analysis of the Plan documents persuades us to agree with appellee's interpretation and to hold that she was involuntarily retired by her employer when, at the close of business on April 30, 1968, it ceased doing the business in which appellee was employed and simultaneously terminated the Pension Plan in which she had a vested interest. As recited above, Section 7.02 of the Plan gave the employer the right in its discretion to retire appellee, who was over sixty years of age and had completed ten or more years of credited service. It is conceded that if she had

said to the employer, at any time prior to May 1, 1968, "I retire" she would automatically have been elevated from Category 3 to Category 2 and entitled to share pro rata with those in Category 2.

On April 30, 1968 the status of appellee as an employee was terminated. We know of no way in which this could be accomplished except by discharge, voluntary resignation, voluntary retirement, or involuntary retirement. See Brown v. Little, Brown & Co., 269 Mass. 102, 168 N.E. 521, 66 A.L.R. 1284 (1929).; and International Telephone & Tel. Corp. v. Local 400, Etc., 184 F.Supp. 866, 869 (U.S.Dist.Ct., N.J. 1960). It is clear she was not discharged, and she did not resign or voluntarily retire. It follows that she was involuntarily retired by the employer within the meaning of Section 7.02 of the Plan.

Appellee was concerned about whether she should take early retirement to preserve her rights under the Plan, but there was evidence that she was assured by both the President and the Executive Vice-President of the title and abstract company that early retirement was not necessary and would not affect her rights under the Plan. This was consistent with her theory which we adopt.

Although there are four *classifications* or *categories* of employees set out in Article XII, § 12.02, there are only two *priorities*. The first is in paragraph (1) which says that distributions to Prior Plan participants will reduce benefits payable under paragraphs (2) and (3). There was good reason for this partiality because those who had participated in the Prior Plan had contributed their own money or benefits from the Prior Plan to the new plan. However, no such reason existed to distinguish between those described in paragraphs (2) and (3). They were all receiving pensions under the new Plan or were entitled to do so upon retirement. Moreover, it is significant that there is no provision in paragraph (2) that distributions

under it will reduce benefits payable under paragraph (3).

The second priority is found in paragraph (4) which provides that after benefits under paragraphs (1), (2) and (3) are paid in full the balance of the funds, if any, will be used to provide pensions for other employees who have accrued credits but are not eligible for pensions.

■ Although good reason existed for separately *classifying* or *describing* those in Categories (2) and (3), in that they have different vesting qualifications and different procedures for determining single sum benefits, we see no reason for implying a *priority* between them. The very language used following the description of those in Category (3) indicates an intent that there should be no such priority. That language is:

> "After the vested interests under the Prior Plan have been paid, if the funds available *in categories (2) and (3)* are determined by the actuary ·to be insufficient *to provide the benefits,* the fund and benefits shall be apportioned *among the various employees* in proportion as to the actuarial value of each employee's accrued credits."

Therefore, we hold that appellee was entitled as actual damages to the amount due to her under her and our construction of the Plan.

■ However, there were no findings by the jury as to the amount of such actual damages. Appellants in their first point of error complain of the judgment against them in the absence thereof. We overrule this point. We agree with appellee that the undisputed evidence established as a matter of law the amount of actual damages to which she was entitled. Appellants' own actuary, R. Paul Schrader, testified without dispute that, assuming that all Category 3 employees retired as of April 30, 1968, the appellee would be entitled to receive $16,493.83. Since we have held

that appellee was retired by her employer on that date, the actuary's assumption in that respect was correct. It was then a mere matter of mathematical calculations, and this witness was shown without dispute to be qualified to make such calculations. The actuary testified in elaborate detail as to the exact amount each employee would be entitled to receive under both theories of construction. His testimony and the exhibits showing the results of his calculations were received in evidence without objection and are undisputed. Once it was established that appellee and the others in Category 3 were entitled to share pro rata with employees in Category 2 (after those in Category 1 were paid in full), the amount to which she was entitled was not in controversy, having been "conclusively established under the evidence." Rule 279. We therefore overrule Point 1.

Points 2 and 3 assert that the award of $17,327.19 to appellee as actual damages is not supported by any evidence and by insufficient evidence. We sustain these points insofar as the amount of the award is concerned and reform such award to correspond to the undisputed evidence that she would have been entitled to $16,493.83 under her and our construction of the Plan.

In appellants' points of error 4–9, 14 and 16 they complain of the judgment insofar as it awards actual and exemplary damages based on misrepresentations and concealment. With respect to the actual damages, since we have held the trustees liable for the amount appellee was entitled to under a correct interpretation of the Pension Plan documents, as actual damages, the allegations concerning alleged fraudulent misrepresentations and concealments become immaterial. The appellee argues vigorously, however, that the case was tried "upon the tort theories and upon the assumption that the Trustees' interpretation of the Trust was correct," and that the verdict entitled her to a judgment on those theories for the somewhat larger actual damages of $17,327.19 for having been prevented by

appellants' said tortious conduct from voluntarily retiring prior to April 30, 1968 and thus putting herself in Category 2. The record does not support this contention. The case was not tried on the tort theory to the exclusion of the suit for declaratory judgment and for recovery of appellee's pro rata share of the benefits under the contract.

Therefore it is not necessary for us to pass upon any of appellants' said points of error 4–9, 14 and 16 except No. 6.

With respect to exemplary damages, appellants say in their point 6 that the award of such damages is not supported by evidence of probative force "in view of the legal requirements for such damages."

Having agreed with appellee's interpretation of the Plan, we also hold that there was no actionable fraud or material concealment because the statements originally made to appellee that her rights under the Plan would not be adversely affected by termination of her employment before her voluntary retirement were correct, and the trustees' subsequent failure to disclose their erroneous interpretation of the Plan had no detrimental effect on appellee's assertion of her contractual rights, which we now recognize. Consequently, any evidence concerning representations and concealments on the part of appellants was wholly incapable of supporting the award of exemplary damages. We therefore sustain Point No. 6.

Points 12 and 13 relate to procedural matters in connection with which we find no reversible error. They are overruled.

Appellants' fifteenth point of error complains of the judgment against the trustees in view of the exculpatory provision in the Trust Agreement embodied in Amendment "B", Section 6 of which reads:

"6. LIMITATION OF LIABILITY OF TRUSTEES: The Trustees shall not be liable for the making, retention or

sale of any investment or reinvestment made by them as herein provided or for any loss to or diminution of the Fund, or for anything done or omitted to be done by them except for their gross negligence, wilful misconduct, or lack of good faith."

We do not see that this exculpatory clause enters into this case at all. In her first cause of action (and aside from her alternative claims of wrongdoing on the part of the trustees) the appellee merely sought to recover the amount clearly due her under a proper construction of the Pension Plan. In that sense she was not suing for damages because of some wrongful act of the trustees, in defense of which the trustees might possibly shield themselves with the exculpatory clause; she was merely demanding what was due her from the assets of the trust estate. As to this kind of claim, the trustees could only answer that they did not owe it or that, owing it, they had paid it, but it was no defense for them to say to appellee that, "although we owe the money to you, we are not paying it because we have heretofore paid it to others." See Langford v. Shamburger, 417 S.W.2d 438, 444 (Tex. Civ.App., Fort Worth 1967, writ ref'd n. r. e.); Langford v. Shamburger, 392 F.2d 939, 941 (5th Cir. 1968); and Republic Nat. Bank & Trust Co. v. Bruce, 130 Tex. 136, 105 S.W.2d 882, 884 (1937). Point 15 is overruled.

■ By their point 17 appellants complain of the awarding of interest on the actual damages at the rate of 10 percent per annum from December 20, 1968, instead of at the rate of 6 percent per annum from the date of judgment. This point makes two complaints: (1) as to the rate of interest, and (2) that interest was allowed from December 20, 1968 instead of from date of judgment. We sustain the first part and overrule the second. Since we have held that appellee's right of recovery is *ex contractu,* and not *ex delicto,* we find no warrant in the law for the allowance of interest at a rate greater than the

legal rate of 6 percent per annum. Article 5069–1.05, Vernon's Ann.Civ.St.

■ It is said in Texas Power & Light Co. v. Doering Hotel Co., 147 S.W.2d 897, 906 (Tex.Civ.App., Austin, 1941, affirmed, 139 Tex. 351, 162 S.W.2d 938):

"While there are cases in which it is left to the jury, under proper instructions to determine whether interest is to be recovered as a part of the damages * * *, it is now a settled rule in Texas that where damages are established as of a definite time and the amount thereof definitely determinable, either by written instruments or by fixed rules of evidence and known standards of value, interest is recoverable as a matter of right from the date of the injury, and it is not necessary to submit the question to the jury. The court may award such interest in its judgment."

There are authorities to the contrary, but we believe the above case states the correct rule and on the strength thereof we overrule appellants' point 17 insofar as it relates to the date from which interest was decreed to run.

■ By their eighteenth point of error appellants complain of the judgment in favor of appellee against the appellant Hexter Corporation "in the absence of findings or conclusive evidence to establish liability on the part of such Defendant." We find no such complaint in the amended motion for new trial, and for that reason hold that the point is waived. Texas Employers' Ins. Ass'n v. Johnson, 323 S.W.2d 345, 353 (Tex.Civ.App., Amarillo 1959, writ ref'd n. r. e.). Point 18 is overruled.

Because of the errors hereinabove set forth, we reverse the judgment of the trial court in part and pursuant to Rule 434 now render the judgment which we think the trial court should have rendered, as follows:

1. The documents composing the Hexter Pension Plan are construed to mean

that upon termination of the Plan, under the facts of this case and insofar as the rights of appellees are concerned, the remainder of the assets of the Trust Fund, after satisfying the vested interests under the Prior Plan, should be distributed pro rata between those retired employees and joint pensioners of the deceased retired employees, those employees who have reached the age of 65 but have not retired, and those employees qualifying for vested pensions and early retirement under the provisions of Article VII of the Plan.

2. That Mary W. Powell do have and recover judgment of and from defendants Louis J. Hexter, D. A. Hammans and Phillip D. McCullouch, individually and as trustees of the Hexter Pension Trust, and against defendant Hexter Corporation, jointly and severally, in the sum of $16,493.83, with interest thereon at the rate of 6 percent per annum from December 20, 1968;

3. That since the involuntary Plaintiffs Annette Rose and Peyton Battle, although duly served with process, have not appeared or prosecuted this suit, they are hereby dismissed without prejudice; and

4. That all costs of court herein to and including the entry of the original judgment of December 1, 1970, be and they are hereby taxed against the defendants Louis J. Hexter, D. A. Hammans and Phillip D. McCullouch and defendant Hexter Corporation, jointly and severally; and that the plaintiff Mary W. Powell have execution for her damages, interest and costs hereinabove awarded to her; and that any relief sought by or on behalf of any party against any other party and not heretofore granted, is denied.

All costs incurred in the trial court from and after the entry of the judgment of December 1, 1970, and the costs of this appeal, are hereby taxed against the appellee.

Reversed and rendered in part and affirmed in part.