**ADA OIL COMPANY, Appellant,**

v.

**DUNLOP TIRE & RUBBER CORP.
et al., Appellees.**

**No. 5010.**

Court of Civil Appeals of Texas,
Eastland.

April 14, 1977.

Rehearing Denied May 5, 1977.

Ernest C. Hurst, Caldwell & Hurst, Houston, for appellant.

Simeon T. Lake, III, Fulbright & Jaworski, Jack C. Ogg, Houston, for appellees.

RALEIGH BROWN, Justice.

This is a suit for damages. Dunlop Tire and Rubber Corporation sued Ryder Truck Lines, Inc., as carrier, and Ada Oil Company, as consignee, for the loss of a quantity of new passenger and truck tires owned by Dunlop and transported to Ada's premises in Houston, Texas. The tires were apparently stolen from such premises.

After a nonjury trial, judgment was rendered in favor of Dunlop against Ada for the sum of $18,958.88 together with interest, attorney's fees and costs, and decreed that Dunlop take nothing against Ryder. Ada Oil Company appeals. We reform and as reformed affirm.

Ada contends that there was no evidence of probative force to support the finding that there was a tender of delivery of the trailer containing the tires, and also the trial court erred in rendering judgment against it because as a matter of law there was no tender of delivery as required by Section 2.509, Texas Business & Commerce Code.

This section provides in part:

"(a) Where the contract requires or authorizes the Seller to ship the goods by carrier

.   .   .   .   .

(2) If it does require him to deliver them at a particular destination and

the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the Buyer when the goods are there so duly tendered so as to enable Buyer to take delivery."

Section 2.503 of the Code provides in part:

"(a) Tender of delivery requires that the Seller put and hold conforming goods at the Buyer's disposition and give the Buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender are determined by the agreement and this chapter (2), and in particular

(1) Tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the Buyer to take possession; . . ."

Ada argues the facts establish that Dunlop through Ryder failed to make a sufficient tender of delivery of the tires to Ada within the meaning and for the purposes of Section 2.503 of the Code so as to shift the risk of loss of the tires to Ada pursuant to the provisions of Section 2.509. It primarily urges the tires were not tendered at a reasonable time.

On Friday, July 13, 1973, Ryder's city dispatcher, Wayne Martin, called the receiving department at Ada telling it that Ryder had a shipment for Ada. Martin was told to send the shipment on out and he so instructed Ryder's driver, Richard Leija. Martin testified that on frequent occasions Ada had rejected deliveries as being untimely and for that reason, he notified Ada in advance of the delivery.

Leija testified that he arrived at the Ada warehouse with his load of tires shortly before 10:00 a.m. on the morning of Friday, July 13, 1973. Other witnesses testified that the delivery was not made until some time Friday afternoon. When Leija arrived at the warehouse, he was instructed by Waymon McCoy, Ada's warehouse supervisor, to drive around to the Western Tire and Rubber side of the warehouse to a fenced enclosure that was kept locked and to back his trailer up to the Ada loading dock. Leija testified that McCoy told him that he would try to get the trailer unloaded that day, but that if he could not, the trailer would be unloaded the following Monday and Ryder would be notified to return and pick up the trailer. McCoy testified that he instructed the driver to return the trailer to Ryder's place of business and bring it back on Monday. Leija testified that McCoy did not object to receiving the load. He left the bill of lading with McCoy, disengaged his tractor from the trailer and departed. McCoy closed the gates of the compound behind him.

McCoy testified that Bob Coston, Ada's office manager, told him to accept the load of tires. He further testified that his crew finished unloading another truck about noon on the Friday in question and spent the remainder of the day preparing to unload the Ryder trailer. Because he did not want to pay overtime to unload the Ryder trailer that day, he decided to unload it another time. McCoy locked the trailer with an Ada lock and kept the key. After Leija left, McCoy chained and padlocked the gate of the Ada compound in which the Ryder trailer was parked.

Coston testified that he had informed McCoy that the Ryder trailer would be arriving and that if he could unload it, he should accept the delivery. He also testified that when he left work on the Friday afternoon in question, the Ryder trailer was locked inside the Ada compound. When he returned to work the following Monday, the lock had been cut and the trailer was gone. Coston testified that it was not unusual to tell a delivery driver to leave his trailer at Ada and return for it later after unloading had been completed. He testified that shipments had been left at Ada overnight and over weekends on the other side of the warehouse.

The trial court made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

5. That out of the 436 new pneumatic tires delivered by Dunlop to Ryder on or

about July 2, 1973, in Louisville, Kentucky, 125 of the 311 small passenger vehicle tires were delivered by Ryder to Red Arrow Freight Lines in Houston, Texas, and ultimately to the House of Tires in Bryan, Texas, by way of Conroe, Texas.

6. That the remaining 311 tires, of which 125 were large truck tires and 186 were small passenger vehicle tires, were delivered by Ryder to a warehouse owned and operated by Ada in Houston, Texas, on or about July 12, 1973, and were received by Ada at that time.

7. That after the delivery of these 311 tires to Ada, on or about July 12, 1973, persons unknown to the parties in this suit broke into Ada's premises on or about July 13, 1973, and stole all 311 of said tires.

9. That at the time of the theft of the 311 tires from Ada's premises on or about July 13, 1973, the reasonable fair-market value in Houston, Harris County, Texas, of the 125 large truck tires was $14,-006.00.

10. That at the time of the theft of the 311 tires from Ada's premises on or about July 13, 1973, the reasonable fair-market value in Houston, Harris County, Texas, of the 186 small passenger vehicle tires was $4,902.88.

13. That of the 311 tires stolen from Ada's premises on or about July 13, 1973, the 125 large truck tires had been purchased from Dunlop by Ada pursuant to a previous sales agreement.

14. That the purchase price agreed upon by and between Ada and Dunlop for the 125 large truck tires was $14,006.00.

15. That the 125 large truck tires purchased by Ada from Dunlop were received by Ada on or about July 12, 1973, in Houston, Texas.

18. That of the 311 tires delivered to Ada on or about July 12, 1973, the remaining 186 small passenger vehicle tires were received by Ada from Dunlop for the purpose of storage and safekeeping pursuant to a 'Dealer Managed Warehouse Agreement' previously entered into by and between Dunlop and Ada.

## SUPPLEMENTAL FINDINGS OF FACT

1. That Ada Oil Co. instructed Ryder Truck Lines, Inc. to deliver 311 tires to Ada Oil Co. on July 12, 1973.

2. That Ada Oil Co. on July 12, 1973, instructed the Ryder Truck Lines, Inc. employee to leave the trailer containing the 311 tires to be unloaded at a later date by Ada Oil Co.

## CONCLUSIONS OF LAW

1. That on or about July 12, 1973, 311 new pneumatic tires shipped by Dunlop were delivered to and received by Ada in Houston, Harris County, Texas.

2. That of the 311 new pneumatic tires received by Ada on or about July 12, 1973, 125 were large truck tires previously purchased by Ada from Dunlop.

5. That pursuant to the terms of the 'Dealer Managed Warehouse Agreement,' Ada became responsible and liable for all of Dunlop's stock warehoused by Ada, and in particular, became liable for the risk of burglary of any of said stock.

6. That at the time of the theft of the shipment of 311 new pneumatic tires on or about July 13, 1973, from Ada's premises, Ada was a bailee for hire of the 186 small passenger vehicle tires contained in said shipment.

7. That the theft of the 311 new pneumatic tires from Ada's premises on or about July 13, 1973, was proximately caused by the negligence of Ada."

In *General Electric Company v. Acme Fast Freight, Inc.*, 324 F.Supp. 1079 (D.C. Md.1971) aff'd 440 F.2d 412 (4 Cir. 1971), a case with facts very similar to those in the instant case, a consignee sued a carrier to recover the value of stereo sets stolen from a trailer parked on the consignee's premises. The trailer arrived at the consignee's ware-

house sometime after the noon hour on Friday. The receiving clerk agreed to have the trailer backed up to a bay and the doors opened so that consignee's employees could unload the trailer early Monday morning. On Monday, the trailer was found to have been stolen.

The court held that where a consignment of goods is delivered to a consignee who has custody and control over it, he accepts the delivery and is liability for any loss that might accrue saying:

"Here, these goods were delivered to General Electric at its warehouse in Baltimore, Maryland. They were accepted, the trailer was backed up, and, as I have repeatedly said, dominion was exercised over them, not so much for the benefit of the carrier, but for the benefit of the consignee.

Whatever rights could be assigned by virtue of the fact that plaintiff's employee protested the acceptance, the fact remains that he did accept the goods and he had the right, of course, under the circumstances, to tell the carrier that he would not accept the goods until Monday morning and require that they be returned and, certainly, in that instance the carrier would have been liable for any loss that might have occurred.

But all of the indicia of acceptance of delivery were exercised here—backing up the trailer and fixing it in a position where the plaintiff's employees could unload it—and arrangements were even made to call (the carrier) upon the completion of the unloading and have the tractor come and take the trailer back to the rail yard for return to Acme."

The court in *Trans-Cold Express, Inc. v. Hardin,* 415 S.W.2d 431 (Tex.Civ.App.—Austin 1967, no writ) said:

". . . Tender of the cargo at its destination to the consignee, followed by actual delivery to the dock of a portion of the cargo, constituted delivery as a matter of law, and served to terminate appellee's responsibilities as a carrier and reduce his liability to that of an ordinary bailee or warehouseman . . ."

See also: *Chief Freight Lines Company v. Holiday Inns of America, Inc.,* 469 S.W.2d 413 (Tex.Civ.App.—Dallas 1971, no writ); *United Firemen's Ins. Co. v. Thompson,* 259 S.W.2d 612 (Tex.Civ.App.—Galveston 1953, writ ref. n.r.e.); *Finck Cigar Factory v. American Ry. Express Co.,* 283 S.W. 219 (Tex.Civ.App.—Galveston 1925, no writ).

■ We overrule Ada's point that there was no delivery as a matter of law.

The rule we must apply in considering appellant's no evidence challenge is stated in *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex.1963):

". . . In determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary . . ."

■ To consider appellant's factually insufficient evidence challenge, we must consider all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Applying the two rules, we overrule appellant's no evidence and factually insufficient evidence points concerning the tender of delivery of the trailer.

Ada urges the evidence is both legally insufficient and factually insufficient to support the court's findings as to the quantity and character of tires delivered by Ryder to Ada. The applicable rule was stated in *Southwest Battery Corporation v. Owen,* 131 Tex. 423, 115 S.W.2d 1097 (1938) as follows:

". . . The courts draw a distinction between uncertainty merely as to the amount and uncertainty as to the fact of legal damages. Cases may be cited which hold that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages . . ."

The court in *Edens-Birch Lumber Co. v. Wood,* 139 S.W.2d 881 (Tex.Civ.App.—

Beaumont 1940, writ dism'd jdgmt.cor.) said:

" 'The rule forbidding the recovery of damages which are uncertain or contingent does not apply where the amount, measure or extent of loss or injury is uncertain; it only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount. And, while the amount or extent of loss or damage must be shown with a reasonable degree of certainty, reasonable certainty is all that is required; the loss or damage need not be shown with mathematical exactness. The amount may be fixed by the jury in the exercise of a sound discretion under proper instructions from the court. Nor, in a case where the damages are incapable of exact ascertainment, is it necessary to place a money estimate on the amount of loss or injury; the jury are allowed to use their own judgment and discretion. Consequently, where it is shown that the defendant's act has occasioned damage to the plaintiff, and the only uncertainty is as to the amount, there can rarely be good reason for refusing, on account of uncertainty, any recovery whatever for the breach.' "

In *Texas Sanitation Co. v. Marek,* 381 S.W.2d 710 (Tex.Civ.App.—Corpus Christi 1964, no writ), the court quoting from 17 Tex.Jur. § 14, pp. 92–95 said:

" 'One who is damaged must not be deprived of a remedy merely because of the difficulties lying in the way of proving his damages and the courts will not permit a guilty party to reap an advantage from his wrong by insisting on a degree of proof which, by reason of his wrongful act, is unobtainable  *  *  *. In cases in which damages should be awarded but there is difficulty in determining the sum that would constitute a fair and adequate compensation, determination of the amount will be left to the sound judgment and wisdom of the trier of facts.' "

█ The tires were stolen before they were inventoried, therefore, Dunlop proved its damages by a process of elimination since it was impossible to prove the extent of the damages by direct evidence.

The shipment of tires originated at Dunlop's warehouse in Louisville, Kentucky. It was comprised of orders for tires by Ada and Alford Gutierrez, Jr., d/b/a The House of Tires, Conroe, Texas. The portion of the shipment ordered by Ada was comprised of 125 1000 × 20 16-ply large truck type tires weighing 14,125 pounds for which Ada had agreed to pay $14,006. The tires ordered by Gutierrez were smaller passenger vehicle tires of various types. Only 311 of the tires that he ordered were shipped weighing 8,481 pounds from Dunlop's Louisville warehouse. Truck tires such as those ordered by Ada were described as weighing anywhere from 120 pounds to 135 pounds each. Passenger vehicle tires such as those ordered by Gutierrez weighed approximately 22 pounds each.

The route taken by the Ryder trailer from the time it left the Dunlop warehouse in Louisville, Kentucky until its arrival at the Ryder terminal in Houston was traced in detail. Sometime after the shipment left Louisville, Gutierrez contacted Dunlop and canceled his order. Coston agreed to accept the shipment of vehicle tires ordered by Gutierrez as part of the inventory of Dunlop tires normally warehoused by Ada. He testified that the load was received by Ada on the afternoon of July 13, 1973 and such load included the shipment of passenger tires originally scheduled for Gutierrez and was received pursuant to the dealer-manager warehouse agreement.

Gutierrez' change of mind and the subsequent agreement by Ada to accept the passenger vehicle tires ordered by Gutierrez was unknown to Ryder. When the Ryder truck arrived at its Houston warehouse, 125 tires were off-loaded and placed in the Red Arrow bay for shipment to Conroe. Leija saw the passenger tires in the Red Arrow bay and he testified that when he looked in his trailer on the morning of July 13, 1973, he saw dust tracks on the floor of the trailer and could tell by the size of the

tracks the tires that had been removed were passenger tires. In mid-July of 1973, Ed Webb, Dunlop's territory manager for Southeast Texas, received a telephone call from Gutierrez advising them that a shipment of passenger tires consigned to The House of Tires in Conroe, Texas, had arrived at the Red Arrow terminal in Conroe. Webb drove to the Red Arrow terminal in Conroe, inspected the tires, and testified that the tires were all Dunlop passenger car tires, and there were no truck tires. He estimated that there were approximately 100–125 passenger tires. Webb contacted Gutierrez who agreed to accept the passenger vehicle tires and requested that they be shipped to his Bryan, Texas store. It was necessary to ship the tires by Central Freight Lines, as Red Arrow did not ship from Conroe to Bryan. Central Freight Lines' delivery receipt reflects 125 tires weighing 3,000 pounds were shipped from Conroe to The House of Tires in Bryan, Texas, in July, 1973.

Leija, the Ryder driver, did not inventory the tires remaining in the Ryder trailer on July 13, 1973. He testified as to the probable makeup of the shipment based on his experience as a delivery driver of tires. His testimony was that the trailer was 45 feet long and after the tires which were placed in the Red Arrow bay had been unloaded, there was 15–20 feet of empty space and 25–30 feet fully loaded with tires from floor to ceiling. The tires he saw nearest the rear door of the trailer were stacked in a weave pattern and were passenger tires. Leija testified that it is normal to stack 50–60 passenger tires in a row and that a row would take 2 feet of space in the trailer. His testimony was that large truck tires were not stacked in a weave pattern, but were stacked at 22 to a row and that a row of truck tires took 3–4 feet of space in the trailer. He testified that 125 large truck tires would have filled 20–25 feet of space in the trailer and that a row of passenger tires consisting of 50–60 tires would take up to 2 feet of space.

Bob Coston, the Ada office manager, inspected the load when the Ryder trailer arrived at the Ada warehouse. He testified that he looked inside the trailer and that there were at least 2 rows of passenger tires in the rear with 5 or 6 stacks in a row, and that he observed large truck tires of the type ordered by Ada in the front portion of the trailer. In his opinion, the trailer contained the 125 large truck tires ordered by Ada.

Applying appropriate rules, we overrule Ada's points of error challenging the legal sufficiency and factual sufficiency of the evidence to support the court's findings as to the quantity and character of the tires delivered by Ryder to Ada.

Ada contends the judgment in favor of Dunlop is excessive by $1,020.72. We agree.

■ Ed Webb reviewed the Dunlop shipping order and computed the value of the least expensive 186 passenger vehicle tires shown on the shipping order. His computations were reduced to writing and were received into evidence without objection. His testimony was that such reasonable market value at the time of the theft was $3,882.59. The court erroneously found the value of such tires to be $4,902.88. The judgment should therefore be reformed to permit a recovery by Dunlop in the amount of $3,882.59 for the loss of the 186 passenger vehicle tires rather than the $4,902.88 award.

■ By cross-point, Dunlop urges the trial court erred in failing to award prejudgment interest at the rate of six percent per annum for the loss of the 186 passenger tires from July 12, 1973 until date of judgment. We agree.

As stated in *Laredo Hides Company, Inc. v. H & H Meat Products Company, Inc.,* 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref. n.r.e.):

"The rule in Texas is that prejudgment interest will be allowed as damages when the principal damages are determinable and established at a definite time, either by rules of evidence or known standards of value. When such is the case, interest is recoverable from the date of the injury.

*Texas Power & Light Co. v. Doering Hotel Co.*, 147 S.W.2d 897, 906 (Tex.Civ.App.—Austin 1941), affirmed 139 Tex. 351, 162 S.W.2d 938 (1942); *Reed v. Fulton*, 384 S.W.2d 173, 179 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.); *Hexter v. Powell*, 475 S.W.2d 857, 864 (Tex. Civ.App.—Dallas 1971, writ ref'd n.r.e.) . . ."

In *Texas Warehouse Company of Dallas, Inc. v. Springs Mills, Inc.*, 511 S.W.2d 735 (Tex.Civ.App.—Waco 1974, writ ref. n.r.e.), it was held a shipper is entitled to recover judgment interest against a bailee for hire when the goods are lost after receipt by the bailee.

Dunlop should have been awarded prejudgment interest on the amount of $3,882.59 for the loss of the 186 passenger tires.

We have considered and overrule all points of error presented by appellant.

The judgment is reformed to provide that Dunlop Tire and Rubber Corporation should recover from Ada Oil Company the sum of $17,888.16 together with interest at the rate of 6% per annum from July 12, 1973 until date of judgment and as so reformed is affirmed.

McCLOUD, C. J., not participating.