**EXXON CORPORATION, Appellant,**

v.

**JEFFERSON LAND COMPANY, INC., et al., Appellees.**

No. 8139.

Court of Civil Appeals of Texas, Beaumont.

Aug. 24, 1978.

Rehearing Denied Sept. 28, 1978.

George Brown, Earl Hines, Beaumont, for appellees.

DIES, Chief Justice.

This case involves the interpretation of a gas lease which requires Exxon, the producer/lessee, to pay the lessor/royalty owners ". . . the market value at the well of one-eighth (⅛) of the gas so sold or used. . . ." The time period by stipulation of the parties is January 1, 1973, through September 30, 1975. All of the gas involved here is sold in the intrastate market.

■ Expert witnesses for both sides gave opinions of the market value at the well of this gas for the quarters of the stipulated time frame. The trial court did not accept the opinions of any of the experts and entered judgment for the plaintiff upon values which did not correspond with that of any witness. Both sides challenge the value findings so made, and we agree that the evidence is factually insufficient to support the values so found.[1] *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). For this reason, the judgment of the trial court must be reversed and the cause remanded.

Since the cause must be tried again, we now express our views upon several of the other more important questions which will likely confront the trial court upon another trial.

### 1. *Market Value*

The oft-cited case of *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 979, 980 (1936), established that "market value" is price property will bring when offered for sale by one who desires to sell but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying. The simplicity of application of this rule to the case at bar is intriguing but is inadequate to protect the rights of all parties to the litigation.

John Tucker, Beaumont, Frank Harmon, Walter B. Morgan, Houston, for appellant.

1. Plaintiffs' counsel explains their complaint with the court's value findings in this manner: "[T]he trial judge simply attempted to *split the difference* between the value figures resulting from an application of the two methods" of valuation presented by the respective parties.

Exxon disagrees with plaintiffs' value testimony, "but concurs with the plaintiff-royalty owners that the trial court's 'split the difference' determination of market value is without support in the evidence."

In *Texas Oil & Gas Corp. v. Vela,* 405 S.W.2d 68, 74 (Tex.Civ.App.—San Antonio 1966), we find the court holding: "[A]ll parties agree that comparable sales of gas are those comparable in *time,* quantity, quality, and availability of marketing outlets." (Emphasis supplied) When the case went to the Supreme Court, *Texas Oil & Gas Corp. v. Vela,* 429 S.W.2d 866, 872 (Tex. 1968), the same language was used.

Further, on page 871 of this opinion of the Supreme Court, we find:

"They [the parties] might have agreed that the royalty on gas produced from a gas well would be a fractional part of the amount realized by the lessee from its sale. Instead of doing so, however, they stipulated in plain terms that the lessee would pay one-eighth of the market price at the well of all gas sold or used off the premises. This clearly means the prevailing market price at the time of the sale or use. *The gas which was marketed under the long-term contracts in this case was not 'being sold' at the time the contracts were made but at the time of the delivery to the purchaser."* (Emphasis supplied)

See also *Butler v. Exxon Corp.,* 559 S.W.2d 410 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.).

Until 1972, the price of natural gas made no dramatic increase and was sold by lessees on long term (10–20 year) contracts. In 1972, its price began a rapid escalation from about 20¢ per thousand cubic feet (Mcf) to over $2.00 per Mcf by the third quarter of 1975.

■ Exxon determines the market value of gas by obtaining from the Comptroller's office records which reflect the amounts paid for all natural gas for each quarter by all producers in such area. For this case, the area used was Railroad Commission District No. 3, plus seven other East Texas counties. This total amount paid by gas purchasers is then divided by the total gas produced resulting in what is known as the "weighted average market price."

Much of the gas sold is under contracts made before January 1, 1972, when the price of natural gas was very low, and therefore the weighted average market price is depressed by gas being sold under these contracts.

Exxon argues, and the trial court found, that this gas was committed, and therefore, old contract prices have verity. Exxon's argument that the gas is committed was ". . . if you connect it to the system and the gas is needed to meet the contracts, yes sir [it is committed]." However, Exxon has not committed the gas from this field to any of its customers; consequently, we do not accept the argument that this is "committed" gas.

Having reviewed the voluminous testimony in our record and having carefully studied the authorities on the subject, we are of the opinion, and now hold, that Exxon's weighted average market price for all gas sold by all producers in the particular area [2] is the proper method of determining the market value of the gas produced after January 1, 1973, *provided* such weighted average does not include the price paid for any gas sold under contract entered into prior to said date. Stated differently, the weighted average market price is that price at which all gas produced in the stated area by all producers therein [whether from new or old fields, strata, or wells] is sold under contracts entered into after January 1, 1973.

### 2. *Prejudgment Interest*

The trial court awarded prejudgment interest on the royalties he found that Exxon owed the lessors.

■ In Texas, where damages are established as of a definite time and the amount thereof definitely determinable, interest is recoverable as a matter of right from the date of the injury. *Texas Power & Light Co. v. Doering Hotel Co.,* 147 S.W.2d 897,

**2.** As applied to this case, the "particular area" is the Railroad Commission District No. 3, and several other East Texas counties, which Exxon has used for years in computing the royalties to be paid for gas produced on the land in question.

**832**

906 (Tex.Civ.App.—Austin 1941), affirmed, 139 Tex. 351, 162 S.W.2d 938 (1942); *Hexter v. Powell*, 475 S.W.2d 857, 864 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.); *City of Galveston v. Russo*, 508 S.W.2d 882, 885 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.).

We have given careful consideration to the very recent decision of *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978), and do not find it controlling. There, as pointed out specifically by the Court (569 S.W.2d at 484), Phillips knew precisely each month the amounts due Stahl, albeit some portion thereof might not be "sustainable." That is not the situation revealed by our record.

■ Until the question of how to arrive at the market value of natural gas at the well head in an intrastate situation where the producer is selling the gas to some customers under preexisting contracts at less prices than prevail today is finally settled by the courts, we cannot say that the amount of damages sustained by lessors was definitely determinable. We, therefore, hold that an award of prejudgment interest in this case was incorrect.

### 3. *Severance Taxes*

■ In Texas, tax on natural gas is assessed on "the amount of gas produced and saved within this State equivalent to seven and one-half per cent (7½%) of the market value thereof as and when produced." Tex. Tax.-Gen.Ann. art. 3.01 (1969).

The trial court refused to allow Exxon to withhold severance taxes on the additional amounts it found owed to the royalty owners. Both sides agree that if Exxon is found to owe the royalty owners additional royalties, no additional tax will ever be paid to the State of Texas. We do not permit Exxon to deduct from the sums it may owe the plaintiff-royalty owners a tax which neither of the parties owes and one which Exxon will never pay. To do so would, in the language used in *Phillips Petroleum Company v. Adams*, 513 F.2d 355, 370 (5th Cir. 1975), "be to give [it] an extracontractual lagniappe" to which it is not entitled in law or in equity.

Exxon has additional points, and the plaintiff-royalty owners have brought forward several cross-points, all of which have been examined. We have sustained one point and one cross-point, and our precatory language explains our views as to those not specifically mentioned, each of which is overruled.

For the reason stated, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

REVERSED and REMANDED.